**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JUNE 10, 2009

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 137486

GREGORY LEWIS HOLDER,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

YOUNG, J.

Defendant received an early parole discharge from the Michigan Department of Corrections (DOC). He committed several crimes seven months after receiving his parole discharge. After being sentenced for these crimes, the defendant received notice from the DOC that his parole discharge was "cancelled." The DOC subsequently sent correspondence to the sentencing judge and the parties, informing the judge of the parole discharge cancellation and asking the judge to amend defendant's judgment of sentence to reflect that the sentence imposed was to be served consecutively to the sentence for which defendant was on parole. The judge complied with the request, amending the judgment of sentence without notice to defendant.

We hold that defendant was not on parole at the time he was sentenced, and the DOC's effort to retroactively cancel defendant's parole discharge had no legal effect on defendant's parole status. Because the original judgment of sentence was valid when imposed, the sentencing judge had no authority to modify it pursuant to MCR 6.429(A). Accordingly, we vacate the amended sentence and remand this case to the circuit court to reinstate the original judgment of sentence.

Additionally, we reiterate that sentencing is the responsibility of our courts, and notices sent to courts from the DOC concerning sentencing errors are merely advisory and informational in nature. Any judge receiving such a notice must identify the nature of the claimed error and determine whether the error actually implicates a defendant's sentence. Ultimately, however, any corrections or modifications to a defendant's sentence must comply with the relevant statutes and court rules.

## FACTS AND PROCEDURAL HISTORY

Defendant was sentenced to prison for narcotics crimes in 1999 and was paroled in April 2004. Beginning in June 2005, the police placed defendant under surveillance after a confidential informant's tip led to two controlled cocaine purchases. For reasons not stated in the record, defendant was given an *early* parole discharge by the DOC on July 22, 2005.

On March 1, 2006, the police investigation ended, resulting in the recovery of large amounts of narcotics, drug paraphernalia, and guns. Defendant reached a plea agreement with the prosecutor. At the plea hearing in January 2007, the

prosecutor stated that there were no agreements for specific sentences but that consecutive sentencing would not apply. Further, the prosecutor elected to forgo any sentencing enhancement under the statutes pertaining to habitual offenders[1] and repeat drug offenders.[2] The presentence investigation report, prepared by the DOC on February 26, 2007, indicated that defendant was *not* on parole.

One month later, defendant was sentenced to concurrent terms of imprisonment as follows: 99 to 240 months for delivery of between 50 and 449 grams of cocaine,[3] 225 to 475 months for possession with intent to deliver over 1,000 grams of cocaine,[4] and 12 to 60 months for being a felon in possession of a firearm.[5] Defendant was also sentenced to a mandatory consecutive two-year term of imprisonment for possession of a firearm during the commission of a felony.[6]

In May 2007, the DOC sent defendant two notices informing him that the parole discharge granted in July 2005 was "cancelled." In January 2008, the DOC sent correspondence to the parties and to the sentencing judge, stating that defendant's discharge from parole had been "cancelled" and that defendant was on

---

[1] MCL 769.12.

[2] MCL 333.7413.

[3] MCL 333.7401(2)(a)(*iii*).

[4] MCL 333.7401(2)(a)(*i*).

[5] MCL 750.224f.

[6] MCL 750.227b.

3

parole when the offenses were committed. The department requested that the judge "issue an amended judgment" to reflect that defendant's sentences were to run "consecutive to parole."[7] A few days later, without providing notice or a hearing to either defendant or the prosecutor, the judge entered an amended judgment of sentence.

After the Court of Appeals denied leave to appeal, this Court heard oral argument on defendant's application for leave to appeal.[8] We also invited the Attorney General to participate and address the DOC's authority to seek an amendment of defendant's sentence.

## STANDARD OF REVIEW

In reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed and enforce that statute as written.[9] We must give the words of a statute their plain and ordinary meaning,

---

[7] Pursuant to MCL 768.7a(2), if a person is convicted and sentenced for a felony committed while on parole, the term of imprisonment for the later felony does not begin to run until the remaining portion of the previous offense has expired.

[8] 483 Mich 890 (2009).

[9] *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999).

4

and only where the statutory language is ambiguous may we look outside the statute to ascertain legislative intent.[10]

## ANALYSIS

### I

Generally speaking, "a prisoner's release on parole is discretionary with the parole board."[11] A paroled prisoner is not considered released; rather, the prisoner is simply permitted to leave the confinement of prison.[12] Indeed, a parolee explicitly "remain[s] in the legal custody and under the control of the department" while on parole.[13] Once parole has been granted, it may be rescinded for cause if a parole violation has been proven by a preponderance of the evidence.[14] Moreover, the DOC possesses the statutory authority to rescind a parole order before a prisoner leaves prison[15] and to amend an existing order of parole.[16]

The statutory provision addressing parole discharge can be found at MCL 791.242(1), which provides:

---

[10] *Id.* at 330.

[11] MCL 791.234(11).

[12] MCL 791.238(6).

[13] MCL 791.238(1).

[14] MCL 791.240a. See also MCL 791.241.

[15] MCL 791.236(2).

[16] MCL 791.236(3).

5

If a paroled prisoner has faithfully performed all of the conditions and obligations of parole for the period of time fixed in the order of parole, and has obeyed all of the rules and regulations adopted by the parole board, the prisoner has served the full sentence required. The parole board shall enter a final order of discharge and issue the paroled prisoner a certificate of discharge.

The plain language of the statute states that the parole board is required to enter a final order of discharge if a prisoner has "faithfully performed" all the "conditions and obligations of parole." In stark contrast to the statutory provisions providing explicit authorization to revoke parole, nothing in this statute permits the DOC to "cancel" or revoke a parole discharge order once the final order of discharge has been entered and the certificate of discharge issued to the prisoner.

In the absence of statutory authorization permitting the DOC to rescind a parole discharge order, this Court's opinion in *In re Eddinger*[17] remains viable and instructive. Discussing the nature of parole discharge, the *Eddinger* Court stated:

> The purpose of a parole is to keep the prisoner in legal custody while permitting him to live beyond the prison inclosure so that he may have an opportunity to show that he can refrain from committing crime. It is a conditional release, the condition being that if he makes good he will receive an absolute discharge from the balance of his sentence; but if he does not make good he will be returned to serve his unexpired time. *The absolute discharge is something more than a release from parole. It is a remission of the remaining portion of his sentence. Like a pardon, it is a gift from the executive, and like any other gift it does not become effective until it is delivered and accepted. After delivery it cannot be recalled.*[18]

---

[17] 236 Mich 668, 211 NW 54 (1926).

[18] *Id.* at 670 (emphasis added).

6

The Attorney General concedes that no express statutory authority exists permitting the revocation of a parole discharge order. However, the Attorney General argues that such authority is "necessarily implied" in order to give "effect" to the DOC's authority to grant parole discharge orders pursuant to MCL 791.242(1). Moreover, the Attorney General notes that, pursuant to *People v Young,*[19] a writ of mandamus may be filed against the DOC, challenging the department's decision to discharge a less-than-model prisoner from parole. The Attorney General maintains that if the DOC can be subject to a mandamus action, then it must have the "corollary authority" to rescind an order of parole discharge.

Because the propriety of the decision in *People v Young* is not properly before us in the present case, we do not address it.[20] Additionally, we decline the Attorney General's invitation to hold that the DOC has the "implied authority" to rescind a final order of discharge where the Legislature has not conferred such authority.[21] Given the Legislature's express grant of authority to the DOC to grant

---

[19] 220 Mich App 420; 559 NW2d 670 (1996).

[20] We note, however, that the clear language of MCL 791.242(1) merely indicates that the parole board is compelled to release a prisoner from parole where the prisoner has *completely* complied with *all* of the rules and conditions imposed by the parole board for the *entire* duration of his parole period. The statutory language does not otherwise place any limitations on the DOC's authority to discharge a prisoner from parole.

[21] An agency such as the DOC has no inherent authority, and the limitations of its power and authority "must be measured by the statutory enactments from

7

parole, revoke parole, rescind an order of parole before a prisoner is released, and amend an existing order of parole, there is no basis to conclude that the Legislature impliedly intended to grant the DOC the authority to rescind a final order of parole discharge. Indeed, because the DOC's ability to exert custody and control over a paroled prisoner is statutorily limited to those "on parole,"[22] there is no statutory basis to conclude that the DOC retains *any* continuing authority over a parolee once parole has been terminated. While we agree with the Attorney General that permitting the DOC to rescind an order of parole discharge "makes practical sense" and is "good policy," it is a matter that should be addressed by our Legislature, not this Court.

## II

According to the DOC, the department routinely sends correspondence advising courts and parties of sentencing errors. This is done in order to fulfill the department's statutory duty to classify prisoners and accurately compute their sentences,[23] as well as to satisfy an agreement made after an investigation by the Auditor General. The letters, identifying sentencing errors described by the department as generally "clerical in nature," are intended to provide information to the sentencing court and the parties. Once the information is provided, the DOC

which it is created." *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 202 n 17; 631 NW2d 733 (2001).

[22] MCL 791.238(1).

[23] MCL 791.264.

8

contends that impetus is on the sentencing court and the parties to rectify the identified errors pursuant to the law and our court rules. In this case, however, the letter sent by the DOC did not merely provide information. Rather, the letter directly asked the court to "issue an amended" judgment of sentence as a result of its cancellation of defendant's parole discharge.

While the DOC certainly has an obligation to ensure that any sentence executed is free from errors, the department is not a party to the underlying criminal proceedings under either MCR 6.429[24] or MCR 6.435.[25] As a result, we wish to reiterate that *any* notices sent from the DOC to the courts and parties regarding sentencing errors are merely informational, and any requests contained therein merely advisory. Any judge receiving such a notice must ascertain the nature of the claimed error, determine whether the error implicates a defendant's sentence, and consider the curative action recommended by the DOC. It is imperative, however, that any corrections or modifications to a judgment of sentence must comply with the relevant statutes and court rules.[26] Significantly, if

---

[24] MCR 6.429(A) permits "*either party*" to file a "motion to correct an invalid sentence." (Emphasis added.)

[25] MCR 6.435(A) permits the court to correct clerical errors "on its own initiative or on motion *of a party . . . .*" (Emphasis added.)

[26] See, e.g., MCL 769.27, which provides:

> If the court changes any sentence imposed under this act in any respect, the clerk of the court shall give written notice of the change to the prosecuting attorney, the defendant, and the defendant's counsel. The prosecuting attorney, the defendant's

9

the claimed error is substantive, the court may modify the sentence only "[a]fter giving the parties an opportunity to be heard" *and* if "it has not yet entered judgment in the case . . . ." MCR 6.435(B). Similarly, if the original judgment of sentence was valid when entered, MCR 6.429(A) controls and mandates that the court "may not modify a valid sentence after it has been imposed except as provided by law."

Here, because the original judgment of sentence was valid when imposed, the court had no authority to modify it in response to the DOC's letters. MCR 6.429(A). Accordingly, we vacate the amended judgment of sentence and remand this case to the circuit court to reinstate the original judgment of sentence.

Robert P. Young
Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Stephen P. Markman
Diane M. Hathaway

---

counsel, or the defendant may file an objection to the change. The court shall promptly hold a hearing on any objection filed.