# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 9, 2016

Plaintiff-Appellee,

v

No. 321355
Macomb Circuit Court
LC No. 2013-003660-FC

JAMAL IBAN WILLIAMS,

Defendant-Appellant.

Before: OWENS, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, and third-degree fleeing or eluding a police officer, MCL 257.602a(3)(a). The trial court initially sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 20 to 30 years in prison for each conviction. Later, after being informed that defendant was subject to a mandatory 25-year minimum sentence for the armed robbery conviction, the court resentenced defendant to 25 to 37½ years for each conviction. We affirm defendant's convictions and affirm the 25-year minimum sentence for defendant's armed robbery conviction, but remand for reinstatement of defendant's original sentence of 20 to 30 years for the fleeing or eluding conviction, and for reinstatement of the original 30-year maximum term for the armed robbery conviction.

## I. UNAVAILABLE WITNESS TESTIMONY

Defendant first argues that the trial court erred in admitting the preliminary examination testimony of a witness, Larry Cole, who failed to appear at trial. Defendant also argues that the trial court abused its discretion by failing to provide the missing witness instruction. We disagree.

We review a trial court's decision to admit evidence for an abuse of discretion, *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014), but any questions of constitutional law are reviewed de novo, *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). Whether the prosecution exercised due diligence to produce a witness depends on the facts of each case. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). We review the trial court's findings of fact for clear error. *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People*

-1-

*v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "This Court reviews a trial court's denial of a request for a 'missing witness' instruction for an abuse of discretion." *People v Snider*, 239 Mich App 393, 422; 608 NW2d 502 (2000).

"Both the United States and Michigan constitutions guarantee a criminal defendant the right to confront witnesses against him or her." *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009). The opportunity to meet one's accuser face-to-face is an important, but not indispensable, element of a defendant's confrontation right. *Maryland v Craig*, 497 US 836, 844; 110 S Ct 3157; 111 L Ed 2d 666 (1990). Face-to-face confrontation "must occasionally give way to considerations of public policy and the necessities of the case." *Id*. at 849 (quotations omitted). Consequently, the "Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008). Statements made during a former trial are testimonial and implicate the confrontation clause. See *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Because Cole's testimony at the preliminary examination was testimonial, for that testimony to be admissible at trial, the Sixth Amendment required: (1) that Cole was "unavailable," and (2) there was a prior opportunity for cross-examination.

The rules of evidence also address this right to confront witnesses. Pursuant to MRE 804(a)(5), a witness is unavailable if he is absent from the hearing and the proponent of his statement has been unable to procure his attendance, notwithstanding the exercise of due diligence. Due diligence is the attempt to do everything that is reasonable, not everything that is possible, to obtain the presence of a witness. See *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). The focus is on whether diligent, good-faith efforts were made to procure the testimony and not on whether more stringent efforts would have produced it. *Bean*, 457 Mich at 684.

If a witness is "unavailable," a party may avoid the hearsay rule and proffer testimony by the "witness [given] at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1). "Whether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding." *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007). The factors considered in evaluating similarity are:

> (1) whether the party opposing the testimony "had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue"; (2) the nature of the two proceedings-both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id*. at 278.]

Defendant argues that the prosecutor failed to exercise due diligence because his efforts to locate Cole were tardy. Defendant relies on *People v Dye*, 431 Mich 58, 75-78; 427 NW2d 501 (1988), and *People v James* (*After Remand*), 192 Mich App 568, 571; 481 NW2d 715 (1992). In *Dye*, the Michigan Supreme Court held that the prosecution did not make a good-faith

effort to produce missing witnesses for a retrial following a mistrial when the witnesses were difficult to locate for the first trial, had an incentive to go into hiding, and were known to have left the state. *Id*. at 76. This case is distinguishable from *Dye* because the prosecutor had no reason to believe before the first day of trial, when Cole did not appear, that he would be difficult to locate or had incentive to go into hiding. Cole initially participated in the police investigation of the crimes, he answered a subpoena to testify at the preliminary examination, and although he had previously been a suspect, he was told that participation could prevent charges.

In *James*, 192 Mich App at 572, this Court determined that the prosecution's efforts were not sufficient where the police had no contact with the witness for 3½ years and did not make an effort to locate the witness before the first day of trial, even though the witness had not responded—as requested—to a mailed subpoena. This Court found that the prosecutor should have known the witness might have changed addresses and would be difficult to locate after 3½ years. *Id.* In contrast, only about five months had passed since Cole testified at the preliminary examination and he had previously responded to a subpoena.

Although the focus of defendant's arguments on appeal is that the prosecutor's efforts were untimely, defendant also argues in passing that some of the efforts were insufficient. When Cole did not appear on the first day of trial, the officer in charge called Cole's cell phone, which had been disconnected. The officer in charge also called Cole's home phone twice a day for four days and left a message each time. The officer in charge determined that Cole was not incarcerated in Michigan and was unable to find updated contact information using two search engines. Two visits to Cole's home netted a phone call by Cole's father to the Warren Police Department informing the authorities that Cole had moved south and was not living in Michigan. Although defendant challenges the lack of effort to verify the veracity and details of this move, the officer in charge testified that he did not follow up because he only received the information on the morning of the due diligence hearing on his way to court. Defendant complains that the government did not investigate whether Cole was on probation, but the focus is whether good-faith efforts were made, not whether more stringent efforts would have produced the witness. *Bean*, 457 Mich at 684. The trial court did not clearly err by concluding that Cole was unavailable.

To the extent that defendant also maintains that the admission of Cole's former testimony violated his right to confrontation, his argument is without merit. Again, use of former testimony does not violate a defendant's right to confrontation provided that, as here, the witness is unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine the witness. *Yost*, 278 Mich App at 370; *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). Defendant does not dispute that he had a previous opportunity for cross-examination, but instead maintains that this opportunity was not adequate for purposes of a trial requiring guilt beyond a reasonable doubt. Contrary to defendant's arguments, while there are differences between a preliminary examination and a trial, a preliminary examination nonetheless affords a defendant an opportunity for effective cross-examination. See *People v Meredith*, 459 Mich 62, 67; 586 NW2d 538 (1998). The Confrontation Clause requires nothing more. See *United States v Owens*, 484 US 554, 559; 108 S Ct 838, 842; 98 L Ed 2d 951 (1988) ("the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (quotation marks and citation omitted)). The motives for conducting a preliminary examination and trial

are strongly similar—to establish a crime has been committed and that the defendant committed the crime. *People v Johnson*, 427 Mich 98, 104-105; 398 NW2d 219 (1986).

Although the burden of proof at the preliminary hearing was lower than that at trial, defendant still had a similar motive to cross-examine the witnesses against him here. Cole testified at the preliminary examination that, around the time of the 7-Eleven robbery, defendant parked his vehicle (a Tahoe) in a residential neighborhood, left the car and stated he was getting something to drink for "girls" they were meeting, and was gone for 30 to 40 minutes. According to Cole, when defendant returned, he was sweating, he did not have any alcohol, and he then engaged in a high speed chase with the police. At the preliminary examination, defense counsel (the same attorney who represented defendant at trial) elicited testimony from Cole that he did not know specifically where defendant parked the Tahoe, he did not know whether a 7-Eleven was nearby, and he never saw defendant with a gun or a mask, which the 7-Eleven cashier reported the robber had worn. In sum, because Cole was unavailable for trial and defendant had a prior opportunity for effective cross-examination, the admission of Cole's preliminary examination testimony at trial did not violate defendant's right of confrontation. *Yost*, 278 Mich App at 370.

Furthermore, because the missing witness instruction is only given when due diligence to produce a witness was not exercised, *People v Eccles*, 260 Mich App 379, 388-389; 677 NW2d 76 (2004), and the trial court did not clearly err in finding that Cole could not be produced for trial despite the exercise of due diligence, the court did not abuse its discretion in failing to provide the instruction.

## II. PROSECUTOR'S CONDUCT

Next, defendant makes numerous claims that the prosecutor committed misconduct. None of these claims were preserved with an appropriate objection at trial. Therefore, we review the claims for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *People v Ackerman,* 257 Mich App 434, 448-449; 669 NW2d 818 (2003). Additionally, this Court may not "find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476 (quotation marks and citation omitted).

### A. PROSECUTOR'S CLOSING ARGUMENT

Defendant initially challenges two statements in the prosecutor's closing rebuttal argument. "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Prosecutors are given latitude with regard to their arguments. *People v Bahoda,* 448 Mich 261, 282; 531 NW2d 659 (1995). "They are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* (Quotation marks and citation omitted). A prosecutor may use "hard language" or "[e]motional language" if the language does not interfere with the defendant's right to a fair trial

and is supported by the evidence. *People v Ullah,* 216 Mich App 669, 678-679; 550 NW2d 568 (1996).

First, the prosecutor stated, "I'm asking you on behalf of [the cashier] to give him something back. Him working at 7-Eleven is never going to be the same anymore." "Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). Although the prosecutor made other arguments that the evidence supported a guilty verdict, the prosecutor's statement here suggested that the jury should also convict defendant to make the cashier whole following the experience. This statement was not made in direct response to an argument by defense counsel. Cf. *Abraham*, 256 Mich App at 275 (where defense counsel accused the prosecutor of brutalizing the child defendant, the prosecutor's response that—considering the case at length—the victim deserved justice was not misconduct). Therefore, the statement constituted plain error.

Second, the prosecutor stated:

And as far as the mask and the gun is concerned, we have no mask, we have no gun. Have you ever heard the concept a criminal might want to ditch something, doesn't want to be found with something on him? . . . Did we find a gun? Yes, we found a gun. Do I know that it was the exact gun used in the robbery? No, I don't. But what I do know is that we found a gun within 12 to 14 hours after the robbery was committed, directly on the line from the 7-Eleven to where he traveled. I do know that the gun was found out on the front lawn, just out in the open. You think maybe if someone is running by and he pitches the gun that that may be something that happened? Could be.

As defendant argues, the officer in charge's testimony about the recovery of a gun was somewhat different. The officer explained that the gun was recovered "the next day," but did not specifically testify that this occurred 12 to 14 hours after the robbery. He also never testified that the gun was recovered from a "front lawn" or "out in the open." A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but the prosecutor is free to argue the evidence and any reasonable inferences that may arise from the evidence. *Ackerman*, 257 Mich App at 450. Therefore, to the extent that the prosecutor relied on facts not in evidence, the prosecutor committed plain error. Although defendant also challenges the statement that the gun was recovered "directly on line from the 7-Eleven to where he traveled," this fact could be reasonably inferred from the officer in charge's testimony that the gun was found on Cunningham, just north of Eight Mile and on the same side of the street where the officers "chased the Tahoe down" a mile away from the store.

In any event, defendant cannot establish that the challenged statements prejudiced him. A timely objection and request for a curative instruction could have cured any perceived prejudice. *People v Unger*, 278 Mich App 210, 240-241; 749 NW2d 272 (2008). Indeed, even without an objection, the trial court instructed the jurors to consider only "the evidence that has been properly admitted in this case," that "[t]he lawyers' statements and arguments are not evidence," and that "[y]ou must not let sympathy or prejudice influence your decision." These instructions to the jury were sufficient to alleviate the prejudicial effect of the inappropriate prosecutorial arguments. *Id.* Moreover, the appeal to the jury's sympathy for the cashier was

isolated, *Watson*, 245 Mich App at 591-592 (prosecutor's argument that the defendant treated the victim in a way that no animal should be treated was isolated and did not cause prejudice requiring reversal); *People v Wise*, 134 Mich App 82, 104-106; 351 NW2d 255 (1984) (characterizing the prosecutor's comment concerning the victim's desire for justice as an improper appeal to jury sympathy, but declining to find error requiring reversal), and the prosecutor's discussion of specific, unadmitted details about the recovery of a gun was not germane to the jury's decision of guilt or innocence. Accordingly, no outcome-determinative error with respect to the prosecutor's closing rebuttal argument requires reversal.

### B. CLAIMS OF MISCONDUCT RAISED IN DEFENDANT'S STANDARD 4 BRIEFS

Defendant raises additional claims of prosecutorial misconduct in two Standard 4 briefs filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.[1]

### 1. EVIDENCE OF THE RECOVERY OF THE GUN

Several of defendant's claims relate to evidence that the gun was recovered along the route of the police chase on the day after the robbery. Defendant seems to argue that the trial court ruled before trial that this evidence was inadmissible. Defendant's argument is inconsistent with the record. Defendant cites a transcript from a *Walker*[2] hearing to support his argument, but that proceeding was limited to the voluntariness of defendant's statement to the police. Defendant also cites the hearing on the motion to quash. Although the parties agreed at that hearing to dismiss the felony-firearm charge, there was again no reference to, or the exclusion of, evidence about the recovery of the gun.

Defendant also appears to argue that the evidence regarding the recovery of the gun was false, and therefore the prosecutor committed misconduct in eliciting it. A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Lester*, 232 Mich App 262, 276-277; 591 NW2d 267 (1998), overruled in part on other grounds in *People v Chenault*, 495 Mich 142, 146; 845 NW2d 731 (2014). But nothing in the record demonstrates that this evidence was false. In closing argument, the prosecutor acknowledged that there was no "exact" proof or fingerprints establishing that this gun was used by defendant in the robbery, but argued that the jury could infer that defendant disposed of the gun along the route of the police chase and that fingerprints might not be recovered because the robber wore gloves. Defense counsel had an opportunity to cross-examine the officer in charge about this evidence. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998) (reversal is not necessary when the prosecutor does not attempt to conceal contradictions in a witness's testimony and defense counsel is afforded a sufficient opportunity to impeach the witness's credibility with his or her prior statements). Absent any knowing use of false testimony, defendant cannot establish that the prosecutor's elicitation of this evidence denied him a fair trial.

---

[1] This Court granted defendant's motion to file the second Standard 4 brief.

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

-6-

To the extent that defendant argues the gun was inadmissible under MRE 404(b), defendant's argument is inapposite. MRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith . . . ." Evidence regarding the recovery of the gun was not admitted to demonstrate defendant's propensity to commit the crime, but rather to establish that defendant was armed with a gun during the charged robbery. "[A]cts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b)." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015) (citation omitted).

To the extent that defendant argues the gun was inadmissible under MRE 403, defendant's argument is unpersuasive. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This Court has explained that unfair prejudice

> " 'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.' " Moreover, admission of "[e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." [*People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (citations omitted).]

Although all relevant evidence is prejudicial, *People v Murphy* (*On Remand*), 282 Mich App 571, 582-583; 766 NW2d 303 (2009), the record does not establish that the evidence about the recovery of a gun in this case injected considerations extraneous to the merits of the lawsuit, such as shock or bias, *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994). Moreover, given the prosecutor's arguments conceding that the gun could not be conclusively tied to the charged crimes, there was no danger that it would be given undue or preemptive weight. *Cameron*, 291 Mich App at 611.

## 2. REFERENCE TO FELONY-FIREARM

Defendant also argues that the prosecutor improperly referenced the felony-firearm charge in closing argument. Defendant's argument is inconsistent with the record. There is no reference to the crime of felony-firearm, MCL 750.227b, in the prosecutor's arguments.

## 3. ELICITING PERJURED TESTIMONY

Defendant argues that the prosecutor improperly elicited perjured testimony from Officer James Twardesky that defendant ran from the scene of the car accident following the police chase with a black hooded sweatshirt matching the suspect's clothing in the armed robbery. Defendant claims that the scout car video proves that the person running was not wearing a hooded sweatshirt. However, defendant has failed to provide the scout car video as required by

MCR 7.210, despite a request from this Court. Because any determination of the merits of this argument necessitates review of the video, defendant's failure to provide it waives appellate review of this argument. *People v Anderson*, 209 Mich App 527, 535; 531 NW2d 780 (1995). We note, however, that Officer Twardesky was not the only witness who testified that defendant was wearing a hooded sweatshirt; Cole testified similarly.

### 4. ELICITING IMPROPER EXPERT TESTIMONY

Defendant further argues that the prosecutor committed misconduct by eliciting testimony from evidence technician, Jason Booms, without qualifying him as an expert. A police officer may provide lay testimony regarding his observations in a criminal matter and his "opinion formed as a result of those observations." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988); see MRE 701 ("[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."). An officer need only be qualified as an expert when his testimony depends on scientific, technical, or other specialized knowledge. *Id*. Here, Booms merely testified regarding the cuts and scrapes he observed on defendant, the tears and blood he observed on defendant's jeans, and the red dye he observed on defendant's hands. The prosecutor did not elicit any testimony that required scientific, technical, or other specialized knowledge. Rather, the prosecutor asked, "Now, you don't know how those holes were in the jeans to be fair to . . . [defendant], you don't know how those got there, is that correct?" And Booms responded, "Correct." Because it was not necessary to qualify Booms as an expert to provide this testimony, defendant cannot establish that the prosecutor's elicitation of it denied him a fair trial.

We note that, on cross-examination, defense counsel asked Booms to reach conclusions and form opinions regarding whether a barbed wire fence[3] could have caused defendant's injuries and the damage to his clothing. Even if Booms's responses to these questions—opinions formed as a result of his observations—were not allowed under MRE 701, however, defendant cannot establish error requiring reversal on appeal. "A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute." *Hoffenblum v Hoffenblum*, 308 Mich App 102, 117; 863 NW2d 352 (2014) (quotation omitted). Because defendant injected these opinions during cross-examination, defendant cannot now complain of an error he precipitated. To hold otherwise would allow defendant to harbor error as an appellate parachute. *Id*.

In a related argument, defendant argues that the prosecutor knowingly elicited false testimony from Booms; specifically that he "could not have conducted these exams himself as he testified to so doing on the record before the jury . . . ." This argument may be deemed waived because it is not articulated in the Statement of Questions Presented. MCR 7.212(C)(5); *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004). Regardless,

---

[3] Officer Twardesky testified that defendant jumped over a barbed wire fence after running from the Tahoe during the police chase.

although a prosecutor may not knowingly use false testimony to obtain a conviction, *Lester*, 232 Mich App at 276-277, defendant points to nothing establishing that Booms's testimony was false. The photographs of the injuries about which he testified were admitted at trial.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief on appeal, defendant makes several arguments that he was denied the effective assistance of counsel. We disagree. Because defendant did not raise these claims in a motion for a new trial or request for a *Ginther*[4] hearing, review is limited to errors apparent on the record. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). As this Court stated in *Gaines*, 306 Mich App at 300:

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." [Citations omitted.]

Defendant argues that defense counsel was ineffective for failing object to the evidence regarding the recovery of the gun, and failing to request a cautionary instruction regarding this evidence. We concluded earlier that defendant failed to establish error surrounding the presentation of this evidence. Because any objection would have been futile, defense counsel was not ineffective for failing to object. *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).

Next, defendant argues that defense counsel failed to investigate the video of the police chase or review it in advance of trial, and as a result, he could not cross-examine the police about it. Defendant has not established the factual predicate regarding defense counsel's conduct. Therefore, this claim necessarily fails. *People v Stokes*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 321303), lv pending; slip op at 14 ("[a] defendant raising a claim of ineffective assistance of counsel bears the burden of proving the factual predicate of his or her claim"). Moreover, contrary to defendant's claim, it appears from the record that defense counsel requested copies of the videos several months before trial. Furthermore, because defendant has failed to provide the scout car video as required by MCR 7.210, and because any determination regarding prejudice would necessitate review of the video, defendant's failure to provide it waives appellate review of this argument. *Anderson*, 209 Mich App at 535.

Defendant additionally appears to argue that he requested that defense counsel cross-examine Officer Twardesky about alleged discrepancies between his testimony and the scout car video, and defense counsel explained to defendant that it was unprofessional to tell the jury that the police lie. Again, defendant's claim fails because he does not establish a factual predicate

---

[4]*People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

regarding defense counsel's conduct. *Stokes*, ___ Mich App ___; slip op at 14. And in any event, it is presumed that defense counsel's decisions regarding what evidence to present constitute trial strategy, which this Court will not review with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Further, because defendant has failed to provide the scout car video as required by MCR 7.210, and because any determination regarding prejudice necessitates review of the video, defendant's failure to provide it waives appellate review of this argument. *Anderson*, 209 Mich App at 535.

Finally, defendant argues that defense counsel was ineffective for failing to properly articulate a request for an investigator to assist his defense that he was not the perpetrator because he was wearing different shoes at the time of his arrest than worn by the robber. A trial court has discretion to appoint an investigator to ensure due process. See *People v Johnson*, 245 Mich App 243, 260; 631 NW2d 1 (2001). Here, the trial court concluded that defense counsel, or by extension the jury, could independently compare the shoes worn by defendant at the time of his arrest (as shown in the police interview video) with the shoes worn by the perpetrator (as shown in the surveillance video of the robbery). Defendant does not argue that an experienced investigator could have provided additional services. Thus, defendant cannot establish that, but for defense counsel's allegedly deficient representation in requesting an investigator, the trial court would have appointed one to serve him and the investigator would have made a difference in the outcome of the trial.

In a related argument, defendant argues that defense counsel was ineffective for failing to pursue the defense about the shoes after the request for an investigator was denied. Again, defendant cannot establish prejudice. Defendant failed to provide this Court with the surveillance video of the robbery and the scout car video as required by MCR 7.210. Therefore, this Court cannot review whether any differences existed between the shoes. Moreover, even if defendant was wearing different shoes when he was arrested, this fact would not eliminate defendant as the perpetrator given the many hours between the crimes and the arrest, during which defendant could have changed his shoes.

Finally, defendant argues that defense counsel should have requested a *Brady*[5] hearing. But defendant does not argue what evidence the prosecution suppressed. See *Chenault*, 495 Mich at 155. Therefore, defendant cannot establish the requisite deficient performance or prejudice.

## IV. CUMULATIVE ERROR

In his second Standard 4 brief, defendant alleges that the cumulative effect of all the errors at trial requires reversal. We disagree. This Court reviews claims of cumulative error to determine if the combination of alleged errors denied the defendant a fair trial. *Brown*, 279 Mich App at 145.

---

[5] *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id.* at 146 (citations omitted). "[O]nly 'actual errors' are aggregated when reviewing a cumulative-error argument." *Gaines*, 306 Mich App at 310. Defendant has only established error regarding two statements in the prosecutor's closing rebuttal argument. But as we concluded earlier in this opinion, the remarks were isolated, the prosecutor's reference to any non-record evidence was not germane to the jury's decision of guilt or innocence, and the trial court's instructions were sufficient to alleviate any prejudicial effect. Because there is no additional error to accumulate in support of a cumulative-error argument, defendant's argument fails.

## V. SENTENCING

At the original sentencing hearing, the trial court sentenced defendant to 20 to 30 years in prison for the armed robbery and third-degree fleeing or eluding convictions. The Michigan Department of Corrections (MDOC) later sent a letter to the trial court advising that because defendant was sentenced as a fourth-offense habitual offender, his minimum sentence should have been 25 years. The trial court then held a hearing at which defendant and the parties appeared. At the hearing, the trial court determined that defendant was subject to a mandatory 25-year minimum sentence under MCL 769.12(1)(a) for the armed robbery conviction. The trial court then ordered resentencing. It then determined that because it was increasing the minimum sentence, "the max has also got to be moved." The trial court resentenced defendant to 25 to 37½ years in prison for each conviction.

Defendant now challenges the trial court's resentencing on several grounds. Defendant first argues that the trial court erred by *sua sponte* ordering his resentencing following the notification from the MDOC. We disagree. MCR 6.429(A) authorizes a court to correct an invalid sentence, and a motion for resentencing is not a condition precedent for the court to correct an invalid sentence under that rule. *People v Comer*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No 318854), lv pending; slip op at 3-4. Defendant was sentenced as a fourth-offense habitual offender. MCL 769.12(1)(a) provides that where a defendant is sentenced as a fourth-offense habitual offender and "the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years." Defendant was convicted of armed robbery, which qualifies as a "serious crime" under MCL 769.12(6)(c). The prior convictions used to establish defendant's habitual offender status were three prior convictions for second-degree home invasion, an offense that qualifies as a "listed prior felony" under MCL 769.12(6)(a)(iii). Because the trial court sentenced defendant as a fourth-offense habitual offender, it was required to impose a minimum sentence of 25 years under MCL 769.12(1)(a). Accordingly, defendant's original minimum sentence of 20 years was invalid, and the court was authorized to correct that sentence under MCR 6.429(A).

Defendant argues that even if the trial court had the authority to correct his invalid armed robbery sentence, it erred by also resentencing him to a minimum of 25 years in prison for the third-degree fleeing or eluding conviction, which is not a "serious crime" under MCL 769.12(6)(c). We agree.

Defendant correctly argues that third-degree fleeing or eluding is not a serious crime as defined in MCL 769.12(6)(c). Thus, this conviction was not subject to a 25-year mandatory minimum sentence under MCL 769.12(1)(a). In *People v Pontius*, 485 Mich 970, 970; 774 NW2d 693 (2009), our Supreme Court explained:

> A trial court does not have authority to modify a valid sentence. MCR 6.429(A); *People v Holder*, 483 Mich 168; 767 NW2d 423 (2009). Where a court imposes a sentence that is partially invalid, only the invalid part of the sentence may be set aside. MCL 769.24; *People v Thomas*, 447 Mich 390, 393; 523 NW2d 215 (1994).

In *Pontius*, our Supreme Court concluded that the trial court had the authority to change an invalid term-of-years sentence for conspiracy to commit murder to a life sentence, but it did not have the authority to change concurrent sentences to consecutive sentences because the original concurrent sentences[6] were valid. In this case, defendant's original sentence of 20 to 30 years for third-degree fleeing or eluding was not invalid. Therefore, the trial court was not authorized to modify that sentence. Accordingly, we remand for reinstatement of defendant's original sentence of 20 to 30 years for the fleeing or eluding conviction.

Defendant further argues that the trial court erred by increasing his maximum sentence from 30 years to 37½ years, which the trial court apparently felt was necessary to comply with the two-thirds rule. See *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972), and MCL 769.34(2)(b).

In *Tanner*, the Supreme Court determined that an indeterminate sentence must have an interval between the minimum and maximum terms sufficient to allow corrections authorities to exercise their jurisdiction and judgment. *Tanner*, 387 Mich at 689-690. A sentence with too short an interval between the minimum and maximum terms frustrates the intent of the indeterminate sentence act; any sentence that has a minimum that exceeds two-thirds of the maximum is improper. *Thomas*, 447 Mich at 392; *Tanner*, 387 Mich at 690. The Legislature codified the *Tanner* two-thirds rule in MCL 769.34(2)(b), which provides that "[t]he court shall not impose a minimum sentence . . . that exceeds 2/3 of the *statutory* maximum" (emphasis added).

As defendant argues, the two-thirds rule of *Tanner* does not apply when a defendant is convicted of a crime requiring a mandatory minimum sentence. *Tanner*, 387 Mich at 690. Further, when a statute authorizes imprisonment for "life or any term of years"—because the minimum will never exceed two-thirds of the statutory maximum sentence of life—the two-thirds rule does not apply. *People v Powe*, 469 Mich 1032, 1032; 679 NW2d 67 (2004).

---

[6] Consecutive sentencing was ordered under MCL 768.7b(2), which gives a court discretion to impose concurrent or consecutive sentences. See *People v Pontius*, unpublished opinion per curiam of the Court of Appeals, issued March 24, 2009 (Docket No. 282187), slip op at 2.

Defendant was convicted of an offense that, under MCL 769.12(1)(b), is punishable by imprisonment "for life or for a lesser term." Defendant was also subject to a mandatory minimum sentence of 25 years for his armed robbery conviction. Therefore, the two-thirds rule does not apply. Consequently, the maximum term of defendant's original sentence for armed robbery was not invalid. Under *Pontius*, 485 Mich 970, citing *Holder*, 483 Mich 168, and *Thomas*, 447 Mich at 393, the trial court was authorized to correct only the invalid portion of defendant's sentence for armed robbery, which was the invalid minimum term. The maximum term was not invalid, either as originally imposed or after the increase of the minimum sentence. Therefore, the trial court erred when it increased defendant's maximum sentence on resentencing. Accordingly, on remand, the trial court shall also reinstate defendant's original 30-year maximum sentence for the armed robbery conviction.

## VI. CONCLUSION

In conclusion, we affirm defendant's convictions of armed robbery and third-degree fleeing or eluding a police office. We also affirm the 25-year minimum sentence imposed on resentencing for defendant's armed robbery conviction. However, we remand for reinstatement of defendant's original sentence of 20 to 30 years for the fleeing or eluding conviction, and for reinstatement of the original 30-year maximum sentence for defendant's armed robbery conviction.

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens