*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PAROLE OF LARRY MOORE.

MONROE COUNTY PROSECUTING
ATTORNEY,

        Appellee,

v

LARRY MOORE,

        Appellant,

and

PAROLE BOARD,

        Appellee.

UNPUBLISHED
April 14, 2022

No. 356955
Monroe Circuit Court
LC No. 20-143365-AP

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Appellant, Larry Moore (Moore), appeals as on leave granted[1] the circuit court's order reversing the decision of the Michigan Parole Board (the Parole Board) to grant Moore parole. Moore argues the Parole Board properly acted within its discretion when deciding to grant Moore parole and, consequently, the circuit court impermissibly substituted its judgment for that of the

---

[1] This Court denied Moore's delayed application for leave to appeal for lack of merit in the grounds presented. *In re Parole of Larry Moore*, unpublished order of the Court of Appeals, entered July 6, 2021 (Docket No. 356955). Our Supreme Court, in lieu of granting leave to appeal, remanded the case to this Court for expedited consideration as on leave granted. *In re Parole of Larry Moore*, ___ Mich ___ (2021) (Docket No. 163313).

Parole Board when it reversed the Board's decision. We reverse the circuit court's order and remand for the circuit court to reinstate the Parole Board's decision.

## I. FACTUAL BACKGROUND

Moore is currently serving two prison sentences: one for second-degree murder, MCL 750.317, and the other for being a prisoner in possession of implements that may be used to injure a prisoner (prisoner possessing weapon), MCL 800.283(4). In 1987, Moore pleaded no contest to second-degree murder, for which the circuit court sentence Moore to 18 to 50 years' imprisonment. According to Moore, after his codefendant, David Neal, raped a woman (the victim) while they were at the victim's apartment, Neal told Moore they had to kill the victim. Moore originally confessed to strangling the victim with a curling iron cord, but later retracted the confession and contended he only handed Neal the cord with which Neal strangled the victim to death. Moore's 1987 presentence investigation report (PSIR) indicated Moore focused more on his discontent with Neal's plea agreement rather than discuss his own role in the murder. In 2013, Moore was found guilty of a prisoner-possessing-weapon charge, for which the circuit court sentenced Moore to 25 months to 7½ years' imprisonment.

In 2012, the Parole Board granted Moore parole, but it subsequently rescinded parole based, in part, on information indicating Moore did not take responsibility for his role in murdering the victim. In 2019, the Parole Board again denied Moore parole, in part, because he continued to minimize his responsibility for the victim's murder. In 2020, the Parole Board again considered Moore for parole. According to reports and evaluations ordered by the Board, Moore consistently recognized he contributed to the victim's death by giving Neal the cord to strangle her and by doing nothing to stop Neal from strangling her. The reports also indicated Moore expressed remorse for his conduct and significantly improved his ability to hold himself accountable for his behavior while incarcerated. Similarly, the reports indicated Moore accepted responsibility for— and recognized his error regarding—numerous misconduct tickets he received over the course of his incarceration. The reports opined Moore had a history of noncompliance with various rules, but his behavior consistently improved over time. The reports also expressed some concern regarding Moore's history of substance abuse, but indicated Moore had successfully completed substance-abuse treatment and actively participated in therapy. The reports indicated Moore had prosocial supports from his family who expressed a willingness to assist Moore on parole. Based on the relevant parole factors, the Parole Board calculated Moore's parole guidelines score at -3, which equated to an average probability of being granted parole. Consequently, the Parole Board found reasonable assurances existed that Moore would not become a menace to society, and it granted Moore parole—subject to numerous conditions.

Appellee, the Monroe County Prosecuting Attorney (the prosecutor), subsequently appealed the Parole Board's decision to grant Moore parole alleging the Board abused its discretion by failing to consider various required parole factors, including the seriousness of Moore's sentencing offense, his lack of acceptance for his past behavior, his lack of behavioral improvement while incarcerated, the potential impact of his release on the victim's family, and his indication he would not continue seeking mental-illness treatment. The Parole Board argued it did not abuse its discretion merely because it reached a different conclusion than would the prosecutor after considering all necessary parole factors. After a hearing on the matter, the circuit court issued a written order reversing the Parole Board's decision. The circuit court concluded the Parole Board

abused its discretion in granting Moore parole because it found it "difficult to believe" Moore truly accepted responsibility for his behavior—especially his role in the victim's murder. Consequently, based on "[t]he nature of the offense together with Moore's consistent and persistent refusal to accept responsibility for the crime (or any number of other matters while incarcerated)," the circuit court found the Parole Board's "conclusion that Moore will not become a menace to society or to public safety if released on parole . . . [fell] outside the range of reasonable and principled outcomes." Moore now appeals.

## II. ANALYSIS

Moore argues the Parole Board did not abuse its discretion by granting Moore parole because it considered all relevant parole factors and properly explained its decision. Moore also argues the circuit court impermissibly substituted its own judgment regarding numerous factors instead of properly deferring to the Parole Board's assessment of the record. Consequently, Moore argues, the circuit court improperly reversed the Parole Board's decision to grant Moore parole. We agree.

## A. STANDARDS OF REVIEW AND BACKGROUND LAW

This Court reviews de novo a circuit court's decision to reverse the Parole Board's grant of parole because the circuit court's decision involves the proper interpretation and application of statutes, court rules, and administrative guidelines. See *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018) ("The interpretation and application of statutes present questions of law that are . . . reviewed de novo."). The circuit court may reverse the Parole Board's decision to grant a prisoner parole only if the prosecutor demonstrates the Board's decision constituted a clear abuse of discretion or violated a constitution, statute, rule, or regulation. *In re Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011); see also MCL 791.234(11) and MCR 7.104(D)(5). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Elias*, 294 Mich App at 538. The Parole Board does not abuse its discretion when it makes a reasonable and principled decision regarding which side to believe when confronted with conflicting information. *Id*. at 546. A circuit court must presume the Parole Board read and considered all materials in the record when making its decision, and the circuit court may not substitute its judgment for that of the Board. *Id*. at 538-539, 547.

The Parole Board has discretionary authority to decide whether to release an eligible prisoner on parole. *Id*. at 521; see also MCL 791.234(11). The Parole Board's discretion is not unlimited, however, because it must consider "[s]tatutorily mandated parole guidelines" and "comprehensive regulatory parole guidelines" to determine the appropriateness of parole. *Elias*, 294 Mich App at 512, 514-515. Under these parole guidelines, the Parole Board must determine "whether parole is in the best interests of society and public safety considering the prisoner's past and current criminal behavior, institutional adjustment, readiness for release, personal history and growth, and physical and mental health." *In re Parole of Haeger*, 294 Mich App 549, 553; 813 NW2d 313 (2011) (quotation marks, citation, and alterations omitted). The Parole Board must also compute and consider a "final parole guidelines score" that determines the prisoner's probability of parole. *Elias*, 294 Mich App at 518; see also MCL 791.233e(1). This score is computed on the basis of:

the prisoner's time served as well as the aggravating and mitigating circumstances of the sentencing offense, the prisoner's prior criminal record, the number of major misconducts committed by the prisoner within the preceding one- and five-year periods, the prisoner's score on risk screening scales, the prisoner's age, the prisoner's performance in recommended institutional programs, and [t]he prisoner's mental health status. [*Haeger*, 294 Mich App at 554 (quotation marks and citation omitted; alteration in original).]

While the Parole Board must provide a substantial and compelling reason to depart from the parole guidelines score for prisoners in the high-probability and low-probability categories, *Elias*, 294 Mich App at 522; see also MCL 791.233e(6), it has "broader . . . discretion" to "grant or deny parole to average[-]probability prisoners for legitimate reasons that are neither compelling nor substantial." *Killebrew v Dep't of Corrections*, 237 Mich App 650, 656; 604 NW2d 696 (1999). The "most important[]" restriction on the Parole Board's discretionary authority, however, is the Board's statutory requirement to have " 'reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety.' " *Elias*, 294 Mich App at 522, citing MCL 791.233(1)(a). Once "the Board has rendered its decision, it must issue in writing a sufficient explanation for its decision to allow meaningful appellate review, and to inform the prisoner of specific recommendations for corrective action if necessary to facilitate release." *Haeger*, 294 Mich App at 556 (quotation marks and citations omitted).

## B. THE CIRCUIT COURT IMPROPERLY REVERSED THE PAROLE BOARD'S DECISION TO GRANT MOORE PAROLE

The circuit court improperly reversed the Parole Board's decision to grant Moore parole. Moore's prison record, which the Parole Board is presumed to have read and considered, *Elias*, 294 Mich App at 547, contained information regarding all the necessary parole factors. A Sex Offender Risk Assessment (SORA) report, a correctional offender management profiling for alternative sanctions (COMPAS) evaluation,[2] and a case summary report all indicated Moore recognized the severity of his offense and expressed remorse for his role in the victim's death, accepted responsibility for his misconduct while incarcerated, vastly improved his behavior and decision-making skills while incarcerated, had relatively few instances of recent misconduct, recognized his need for substance-abuse and mental-health treatment, successfully completed numerous rehabilitation programs, and had familial support in the community. The record, however, also contained some concerns regarding Moore's history of impulsivity, substance abuse, and noncompliance with various prison rules. Because these concerns regarding Moore's suitability for parole were present in Moore's prison record, the circuit court erred to the extent it

---

[2] COMPAS is "a comprehensive risk and needs assessment system, which takes into account both static information (such as the prisoner's past criminal offenses) and dynamic data (such as the prisoner's evolving attitudes and mental condition)." *Elias*, 294 Mich App at 520. The COMPAS evaluation considers various characteristics of the offender and "generates a score ranking the offender's statistical likelihood of violence, recidivism, success on parole, and other factors." *Id*. at 521.

assumed the Parole Board ignored this evidence. Moreover, that the Parole Board conditioned Moore's parole on receiving mental-health and substance-abuse treatment demonstrates it determined Moore did not pose a threat to public safety despite his known, ongoing issues. The circuit court similarly erred for substituting its judgment for that of the Board's regarding this assessment. *Id*. at 538-539.

The circuit court also failed to consider in a proper context the record's conflicting statements regarding Moore's acceptance of his role in the victim's murder. As indicated by Moore's 1987 PSIR, Moore originally focused more on the miscarriage of justice posed by Neal's plea agreement than his role in the victim's death. The circuit court erroneously relied on this PSIR as a present indication of Moore's position,[3] but Moore has accepted responsibility for his actions numerous times since then. Most recently, Moore indicated he knew giving Neal the cord and failing to stop Neal from strangling the victim were morally wrong, selfish acts that led to the victim's death. Moore stated he deeply regretted his conduct and recognized he belonged in prison for it. Multiple reports also indicated Moore made significant progress in holding himself accountable for his behavior and was unlikely to make excuses or minimize the seriousness of his offense. Interestingly, a 2020 case summary report contained one of the only recent indicators contradicting this conclusion—which merely stated Moore and Neal each blamed the other for actually murdering the victim—but it is unclear whether the report writer's opinion was made on the basis of the 1987 PSIR or a recent interview with Moore.[4] Similarly, contrary to the "pattern" alleged by the circuit court of Moore denying responsibility for his actions, the record demonstrates Moore has accepted responsibility for—and stated he regretted—each of his infractions, including his numerous misconduct tickets and his 2013 prisoner-possessing-weapon offense. The record thus demonstrates Moore has consistently improved his ability to accept responsibility for his behavior since he was incarcerated.

In addition to misreading the record—and perhaps as a result of it—the circuit court also impermissibly substituted its judgment for that of the Board regarding Moore's acceptance of responsibility. Notably, the circuit court expressly indicated it found Moore's statements of remorse "difficult to believe," a conclusion that directly contradicts numerous reports in the record and the Parole Board's indication that Moore accepted his criminal history. The circuit court contended the Parole Board abused its discretion by arriving at its conclusion on the basis of the conflicting information in the record. The circuit court also contended the manner in which Moore phrased his acceptance of responsibility was insufficient to demonstrate actual remorse or acceptance. The Parole Board did not abuse its discretion, however, merely by arriving at a

---

[3] To support its claim that Moore still denied his involvement in the victim's murder, the circuit court stated, "Page 2 of the [SORA] report details that Moore rather than discuss his role in the murder tends to focus on the miscarriage of justice he sees in" Neal's plea agreement. However, the SORA report provided this information as a direct quote from Moore's 1987 PSIR, not as an indicator of Moore's behavior during the SORA evaluation.

[4] The report writer provided a summary of the victim's murder, but did not indicate from where he got the information for the summary. The format of the summary, the words used, and the order the information was presented suggest the report writer may have been merely summarizing the information from the 1987 PSIR.

different conclusion than the circuit court regarding this conflicting evidence on the record. See *Haeger*, 294 Mich App at 579 ("It is not an abuse of discretion for two fact-finders to reach different conclusions from the complex and potentially conflicting information within a prisoner's record."). The Parole Board's assessment of Moore's demonstration of remorse and acceptance of responsibility was supported in the record, entitling it to deference by the circuit court regardless of how the circuit court may have assessed the evidence. Consequently, the circuit court erred by impermissibly substituting its judgment on the matter for that of the Board. *Elias*, 294 Mich App at 539.

Moreover, the circuit court's emphasis on whether Moore admitted murdering the victim was misplaced because that consideration is relatively immaterial. A prisoner need not *admit guilt* to be entitled to parole. See *People v Conley*, 270 Mich App 301, 314; 715 NW2d 377 (2006) (explaining a court may not consider a defendant's refusal to admit guilt when sentencing him or her).[5] Rather, the Parole Board is to consider a prisoner's "[d]emonstrated *willingness to accept responsibility* for past behavior"; an explicit admission of criminal guilt is not a parole factor. *Elias*, 294 Mich App at 514 (emphasis added). Since his conviction, Moore has maintained he did not strangle the victim, but rather, provided Neal the cord to strangle the victim. Moore has consistently accepted responsibility for his conduct, which he acknowledges led to the victim's death, and he recognizes he belonged in prison for his conduct. The Parole Board has no duty to obtain an admission from Moore that was not necessary to incarcerate him in the first place, nor did it abuse its discretion by granting Moore parole without requiring he admit to conduct in which he has always maintained he did not engage. While the circuit court clearly was unsatisfied with the degree of Moore's acceptance of responsibility, this Court must defer to the Parole Board's assessment of Moore's remorse, not the circuit court's.

Additionally, the circuit court improperly relied on the nature of Moore's sentencing offenses and misconduct tickets when reviewing the Parole Board's decision. "The Board should consider a prisoner's sentencing offense when determining whether to grant parole to a prisoner, but the Board must also look to the prisoner's rehabilitation and evolution throughout his or her incarceration." *In re Spears*, 325 Mich App 54, 60; 922 NW2d 688 (2018) (quotation marks and citation omitted). "Giving the various static and dynamic factors similar weight allows the Board to effectuate both the punitive and rehabilitative features of the corrections system." *Haeger*, 294 Mich App at 580. Although Moore's record demonstrated he had dozens of misconduct tickets over the course of his three-decade incarceration, the most relevant misconduct is that which occurred within one to five years prior to the parole decision. *Haeger*, 294 Mich App at 554. Moore's two assault tickets—issued in 1989 and 2013—and Moore's 2013 prisoner-possessing-weapon conviction all occurred outside that relevant period. Moore's three sexual misconduct tickets were over 25 years old and were issued not for assaultive sexual conduct, but for kissing another prisoner. Moore's most recent infractions during the relevant period were for relatively minor issues, such as possessing tattoo equipment and being out of place. Moreover, Moore's final parole guidelines score accounted for Moore's misconduct tickets as static factors, and the circumstances of the victim's murder were accounted for both at sentencing and in Moore's final

---

[5] Given the decision to grant or deny parole affects how long a prisoner remains incarcerated, considerations regarding admissions of guilt are equally impermissible during parole decisions.

parole guidelines score. As described earlier, the record also indicated Moore actively and successfully participated in rehabilitative programs and therapy. Based on this record, it appears the Parole Board properly weighed Moore's static factors against the dynamic factors indicating he was evolving and working toward rehabilitation. The circuit court, however, seems to have largely disregarded these dynamic factors and erroneously placed undue weight on the static factors.

Similarly, the circuit court placed undue weight on the Parole Board's decision to deny Moore parole in 2019. The circuit court opined it was difficult to believe enough changed in one year to make Moore eligible for parole. Prior denials of parole should not be considered as a parole factor, however, because different Parole Board panels are entitled to arrive at differing conclusions regarding suitability for parole.[6] *Id.* at 579. Moreover, the circuit court again failed to defer to the Parole Board's assessment that Moore's circumstances sufficiently changed since his last parole review. Importantly, even if there existed some concerns about Moore's success on parole, the Parole Board did not simply free Moore by granting him parole. "A paroled prisoner is not considered released; rather, the prisoner is simply permitted to leave the confinement of prison. Indeed, a parolee explicitly 'remain[s] in the legal custody and under the control of the [Michigan Department of Corrections] while on parole." *People v Holder*, 483 Mich 168, 172-173; 767 NW2d 423 (2009), quoting MCL 791.238(1) (other citation omitted). The Parole Board expressly subjected Moore to numerous conditions on parole to monitor and ensure Moore's success. Many of the conditions directly addressed outstanding concerns, such as requiring Moore to receive substance-abuse and mental-health treatment, and to remain away from Neal and the victim's family. The Parole Board determined the record demonstrated Moore was rehabilitated enough to be returned to society with necessary oversight, and the circuit court erred by substituting its own judgment in place of the Board's reasonable and principled judgment on the matter.

Based on computation of all the aforementioned factors, the Parole Board calculated Moore's parole guidelines score at -3, placing him in the average-probability range.[7] The Parole Board's discretionary authority to grant Moore parole was, therefore, at its strongest. See *Killebrew*, 237 Mich App at 656 (explaining the Parole Board may deny or grant average-probability prisoners parole for any "legitimate reasons"). The Board supported its grant of parole with a sufficient explanation of legitimate reasons, all of which were supported by the record. Further, the record indicates the Board placed multiple conditions on Moore's parole to ensure he did not become a menace to society or to the public safety. Because its decision was within the range of reasonable and principled outcomes, the Parole Board did not abuse its discretion by granting Moore parole. Consequently, the circuit court impermissibly substituted its own judgment for that of the Parole Board when it determined the Board abused its discretion merely

---

[6] While the Parole Board may consider a prisoner's prior criminal record as demonstrated, in part, by "parole failures," *Elias*, 294 Mich App at 516, quoting Mich Admin Code, R 791.7716(3)(b)(*vi*), a *failure while on parole* is distinct from a *denial of parole*.

[7] "A prisoner with a score of +3 or greater merits placement in the high-probability category, a score of -13 or less warrants assignment to the low-probability category, and a score between those figures falls within the average-probability category." *Elias*, 294 Mich App at 518.

because the circuit court would not have granted Moore parole.  For that same reason, the circuit court improperly reversed the Parole Board's decision to grant Moore parole.

Reversed and remanded for reinstatement of the Parole Board's decision to grant Moore parole.  We do not retain jurisdiction.  This opinion is to have immediate effect, MCR 7.215(F)(2).

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto