PEOPLE v REINCKE (ON REMAND)

Docket No. 232662. Submitted December 2, 2003, at Lansing. Decided
    January 27, 2004. Approved for publication March 16, 2004, at
    9:05 A.M.

    Duane E. Reincke was convicted by a jury in the Calhoun Circuit
    Court of first-degree criminal sexual conduct that involved a
    three-year-old female victim. The court, Allen L. Garbrecht, J.,
    departing from a statutory sentencing guidelines range of 81 to
    135 months of imprisonment, imposed a sentence of 30 to 60 years
    of imprisonment. The Court of Appeals, WHITBECK, C.J., and HOOD
    and KELLY, JJ., affirmed the conviction and sentence in an unpub-
    lished opinion per curiam, issued December 6, 2002 (Docket No.
    2326662). The Supreme Court, in lieu of granting leave to appeal,
    remanded the case to the Court of Appeals for reconsideration in
    light of People v Babcock, 469 Mich 247 (2003). 469 Mich 950
    (2003).

        On remand, the Court of Appeals held:

        Under Babcock, the Court of Appeals, when reviewing a sen-
    tence that is not within the appropriate sentencing guidelines
    range, must determine whether the sentencing court articulated a
    substantial and compelling reason for departing from the range
    and whether the substantial and compelling reason justifies the
    sentence that the sentencing court did impose. In this case, the
    trial court articulated three reasons for departing from the guide-
    lines: the brutal and severe physical injuries inflicted on the
    victim, the vulnerability and defenselessness of the victim, and the
    need to protect society against the defendant. The articulated
    reasons are substantial and compelling, are objective and verifi-
    able, and they keenly or irresistibly grab the attention of the Court
    of Appeals. The articulated reasons justify the sentence imposed.
    The extent of brutality shown by the defendant toward a three-
    year-old child, resulting in severe blood loss and requiring major
    reconstructive surgery, virtually defies description. Nothing in the
    statutory guidelines adequately accounts for the defendant's pe-
    culiarly brutal act, and society will be well served and protected by
    having the defendant removed from its midst for as long as
    possible.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *John A. Hallacy*, Prosecuting Attorney, and *Jennifer Kay Clark*, Assistant Prosecuting Attorney, for the people.

Duane E. Reincke in propria persona.

ON REMAND

Before: WHITBECK, C.J., and OWENS and KELLY, JJ.

PER CURIAM. This case comes to us on remand from the Supreme Court[1] for reconsideration in light of *People v Babcock*.[2] *Babcock* deals with sentencing issues, in particular with departures from the statutory sentencing guidelines that the Legislature enacted in 1998.[3] As stated in *Babcock*, the role of this Court is, first, to determine whether the trial court's sentence was within the appropriate guideline range and, second, if the sentence is not within the appropriate range, to determine whether the trial court articulated a " 'substantial and compelling' reason for departing" from that range.[4]

There is no dispute here that the trial court's sentence exceeded the statutory sentencing guidelines: the guideline range was 81 to 135 months' imprisonment but the trial court imposed a sentence of 30 to 60 years' imprisonment. As a result, we must decide two questions. First, we must determine whether the trial court articulated substantial and compelling reasons for a

---

[1] 469 Mich 950 (2003).

[2] *People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003).

[3] MCL 777.1 et seq.

[4] *Babcock, supra* at 256.

departure from the guidelines. Second, we must deter-
mine whether these substantial and compelling rea-
sons, if they exist, justified the sentence that the trial
court in fact imposed. On the basis of our review of the
record, including the sentencing transcript, we con-
clude that the trial court articulated substantial and
compelling reasons for a departure from the guidelines
and that these reasons justified the sentence that the
trial court imposed. Therefore, we affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

The facts in this case are horrific. For the sake of
completeness, we set them out verbatim from our
original opinion in this case.

> Andrea Imhof and the victim, her three-year old daugh-
> ter, moved in with defendant after the couple met in the
> Army Reserves. The victim was in daycare from 2:30 P.M. to
> 11:00 P.M. On April 26, 2000, Imhof advised her babysitter,
> Barbara Ann Morgan, that defendant would pick the victim
> up because she had to work late. On that date, Morgan saw
> the victim in the bathroom and did not observe any injury
> to her genital area. The victim was wearing blue pajamas
> and underwear when defendant picked her up at approxi-
> mately 11:10 P.M. Imhof arrived home after 1:00 A.M. and
> saw the victim, completely naked, walk from the bathroom
> to her bedroom. The victim started to cry. Imhof picked up
> her child and found blood completely covering the victim's
> bottom. The source of the blood flow could not be deter-
> mined. Defendant drove to the hospital. At the hospital,
> defendant reported seeing a spot of blood, but assumed it
> was from a scratch or cut on the victim's leg. He did not
> report any activity or incident that could have caused the
> victim's injuries.
>
> Dr. Chandra DeLorenzo determined that transfer to
> another facility for surgery was required because of the
> extensive nature of the bleeding. Dr. DeLorenzo testified
> that a straddle injury is demonstrated by bruising to outer
> tissues of surrounding skin. The victim did not have

bruising indicative of a straddle injury. Rather, Dr. De-Lorenzo opined that the victim suffered a penetration injury that occurred with a significant amount of force based on the angle toward the back of the vagina. The penetration injury theory was also expressed by the examining nurse, Jodi Reeves, and the surgeon, Dr. Ronald Hirschl, who treated the victim at Sparrow Hospital. However, both Reeves and Dr. Hirschl testified that they could not definitively determine what had caused the victim's injury. The injury resulted in a complete tear of the tissue separating the vagina from the rectum. Although an experienced pediatric surgeon, Dr. Hirschl had never seen such an injury and studied how the reconnection of the tissue would occur. Dr. Hirschl had difficulty even locating the severed tissue to plan the repair. Dr. Hirschl emphasized that the area of injury was elastic and the degree of force used to cause the injury was significant.

Defendant initially did not report any type of penetration. Later, defendant admitted to an accidental penetration. Defendant found the victim awake in her bed and believed that she had wet the bed. He reached in between her legs to check the bed. His hand was open, and his nails were long after overcoming a compulsion to chew his fingernails. The victim startled him by jumping. He lost his balance, reached for the bed, and brushed the victim's private parts. While defendant opined that the accidental penetration by his long fingernail caused the injury, all three medical personnel rejected the possibility that a fingernail could have caused such an extensive injury.[5]

## II. STANDARD OF REVIEW

Our review of a sentencing case involving a guidelines departure is not de novo.[6] We are not to substitute our judgment for that of the trial court; rather, we must accord the trial court's determinations "some degree of

---

[5] Unpublished opinion per curiam of the Court of Appeals, issued December 6, 2002 (Docket No. 232662).

[6] *Babcock, supra* at 268-269.

deference."[7] In this regard, however, our review is to be "less deferential than the *Spalding*[8] abuse of discretion standard,"[9] which states that an abuse of discretion occurs when the lower court's decision is " 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' "[10] Under *Babcock*, we are to recognize that "there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome."[11] "When the trial court selects one of these principled outcomes, the trial court has not abused its discretion," and it is proper for us to defer to the trial court's judgment.[12] We are to find an abuse of discretion, however, "when the trial court chooses an outcome falling outside this principled range of outcomes."[13] The Supreme Court summarized our standard of review:

> [T]he Court of Appeals must determine, upon review of the record, whether the trial court had a substantial and compelling reason to depart from the guidelines, recognizing that the trial court was in a better position to make such a determination and giving this determination appropriate deference. The deference that is due is an acknowledgment of the trial court's extensive knowledge of the facts and that court's direct familiarity with the circumstances of the offender. The Court of Appeals is to conduct the thorough review required by MCL 769.34(11), honoring

---

[7] *Id.* at 269.

[8] *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959).

[9] *Babcock, supra* at 269.

[10] *Id.* at 266, quoting *Spalding, supra* at 384-385.

[11] *Id.* at 269.

[12] *Id.*

[13] *Id.*

the prohibition against departures not grounded in substantial and compelling reason. MCL 769.34(3). In doing so, however, the Court must proceed with a caution grounded in the inherent limitations of the appellate perspective.[14]

### III. THE TRIAL COURT'S ARTICULATION OF REASONS FOR DEPARTING FROM THE SENTENCING GUIDELINES

Our first task on remand is to determine whether the trial court articulated substantial and compelling reasons for its upward departure from the sentencing guidelines. The trial court articulated three reasons for that upward departure. The first related to the nature of the offense. The trial court referred to the injuries that defendant had inflicted on a three-year-old girl, stating:

> In terms of the vaginal wall being torn apart, and into—extending into the rectum. And the fact that, as I've already indicated, she had to be under general anesthesia just to be examined, just to ascertain what the extent of the injuries were.
>
> We've heard the physician talk of the amount of force that would have been required to incur those—those injuries. It wasn't pretty, obviously, and it wasn't pleasant to listen to that testimony. This is a crime of incomprehensible brutality.

Our review of the record substantiates the trial court's articulation on this point. Dr. Ronald Hirschl examined the child in the emergency room at Sparrow. He testified that the "ripping" he observed was almost the equivalent of childbirth. He testified that he examined the child's rectum and discovered that he could see his gloved finger in her vagina, through the tear. He testified that the combined tear of the child's perineum

---

[14] *Id.* at 270.

and vagina was so extensive that "there was a [jagged] sort of pattern, and I had to figure out how to reconstruct them, what went back to what."

The second of the trial court's articulated reasons related to the vulnerability of the child. After making its comments on the nature of the offense, the trial court stated:

> And what makes it especially incomprehensible is that it was committed upon a wholly, wholly defenseless and wholly innocent three-year-old child, and in my view, the sentencing guidelines in this case, and the guideline range is six to 11 years, or somewhere thereabouts, I don't think that those guidelines can possibly come close to adequately taking into account that kind of brutality. Which has been exhibited in this case by you [defendant]. They just don't take this into account.

Our review of the record substantiates the trial court's articulation on this point as well. While it is true that there had not, at the time of sentencing, been professional treatment and counseling sought for the child, this was logically a function of the child's age and nothing more. When reviewing the offense scoring variables, the trial court accurately observed:

> Well, under Offense Variable Four, first of all, I mean, it's clear under the Instructions, that whether or not she is presently receiving treatment or has presently sought treatment is not conclusive in terms of scoring.
>
> Looking at the circumstances surrounding this offense, and her age, and the trauma she obviously suffered. And going beyond that, I have a Victim Impact Statement having been submitted to me from the father of this child, who describes her demeanor today. Post-incident, and his contacts with her, and I think-I think it's quite clear through his description of her actions, her conduct, her demeanor, and what have you, since this incident, as well as the circumstances surrounding the incident itself, that it is

unquestioned that there will be the need for some psychological treatment and counseling for this child in the future.

The trial court's third articulated reason related to the need to protect society in light of the circumstances of the crime. After commenting to defendant that it had not allowed its emotions to dictate what an appropriate sentence should be in this case, the trial court stated:

> But I think that, based on what I've heard and what I've seen, and what's transpired in this case involving this totally defenseless three-year-old child, that you, for the protection of our society, that you be separated from society for a long time. And-and not only for [the child's] benefit, but for society's benefit as well.

Once again, our review of the record substantiates the trial court's articulation on this point. Defendant's version of the assault upon the child was that he accidentally penetrated her vagina with a long fingernail when she "jumped" as he was touching her vagina to see if she had wet the bed. Rather obviously, the jury—which took approximately twenty minutes to return a guilty verdict—did not believe defendant's explanations. Likewise, the trial court—which had extensive knowledge of the facts and direct familiarity with defendant's circumstances—did not credit defendant's "accident" explanation for a moment. The jury convicted defendant of a brutal, horrific, and heinous crime. There can be no doubt that, on the facts of this case, separation of defendant from society, "for a long time" as the trial court aptly put it, was completely justified.

We therefore conclude that the trial court's three articulated reasons were "objective and verifiable,"[15]

---

[15] *Id.* at 258.

and that they "keenly" or "irresistibly" grab our attention.[16] Indeed, we view this case to be one of those exceptional cases in which an upward departure from the statutory guidelines is fully justified.

### IV. THE TRIAL COURT'S SENTENCE

Our second task on remand is to determine whether the trial court's articulated reasons justified the sentence that the trial court imposed. Above, we have examined all the factors that the trial court articulated. In considering the undoubted severity of the sentence that the trial court imposed, we note, as did Justice YOUNG in his dissent to the Supreme Court's order, that the extent of the brutality shown by defendant toward a three-year-old child, resulting in severe blood loss and requiring major reconstructive surgery, virtually defies description. We further note that nothing in the statutory guidelines adequately accounts for this peculiarly brutal act, and that our society will be well served and protected by having defendant removed from its midst for as long as possible. We conclude, therefore, that not only did the trial court articulate substantial and compelling reasons for its upward departure from the statutory sentencing guidelines, those reasons justified the *particular* departure in this case.[17] We further conclude that the outcome that the trial court reached fell within the range of reasonable and principled outcomes.

Affirmed.

---

[16] *Id.*

[17] See *id.* at 259, citing *People v Hegwood,* 465 Mich 432, 437 n 10; 636 NW2d 127 (2001).