*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KYLAND ANDREW HUDSON,

        Defendant-Appellant.

UNPUBLISHED
January 11, 2024

No. 364471
Calhoun Circuit Court
LC No. 2017-001326-FH

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

After two previous remands for resentencing, defendant appeals by right the sentence imposed for his jury convictions on one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c) (sexual penetration during another felony); one count of production of child sexually abusive material, MCL 750.145c(2); and one count of second-degree child abuse, MCL 750.136b(3). For reasons explained in this opinion, we affirm.

## I. BACKGROUND

Defendant was charged and convicted of the crimes indicated above which stemmed from defendant's sexual assaults of his minor stepdaughter while unconscious and his video recording of five such assaults on his cell phone. At defendant's initial sentencing, the trial court exceeded the recommended minimum sentencing guidelines range to a minimum of 360 months imprisonment for his CSC-I conviction, an upward departure of 79 months.

Defendant appealed and a panel of this Court affirmed defendant's convictions but vacated his sentences and remanded the case for resentencing.[1] The panel held that the trial court failed to explain its reasons for departing from the sentencing guidelines, failed to refer to the guidelines

---

[1] *People v Hudson*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2019 (Docket No. 342001) (*Hudson I*).

when doing so, and failed to explain why the guidelines inadequately accounted for defendant's conduct.

At the resentencing, the trial court explained the rationale for its upward departure, starting with defendant's grooming of the victim. The court also referred to defendant's use of medication during his illicit sexual conduct against the victim and the victim's potential fear that the five videos may appear online. The trial court concluded that the recommended sentence under the sentencing guidelines could not appropriately assess the damage to the victim or her family, nor the future gratification that defendant hoped to receive by keeping the videos. The trial court reinstated defendant's original sentence.

Defendant appealed the trial court's reinstatement of its original sentence, and a panel of this Court held that, despite its expanded analysis regarding the insufficiency of the guidelines range, the trial court still failed to adequately justify the propriety of the upward departure of 79 months.[2] Consequently, this Court again remanded the case for a second resentencing.

At the second resentencing, the trial court expressed how unfortunate it was for all parties that the case had been remanded a second time. The court then acknowledged this Court's interest in making sure that the trial court adhered to the law. The court then outlined its reasons for departing from the sentencing guidelines when it sentenced defendant. The trial court began by discussing how defendant abused the authority that he held over the victim. It next referred to the victim's status as a teenager at the time of defendant's sexual abuse and the impact that such abuse could have on someone of the victim's young age. The court also discussed how filming the abuse could have a very serious impact on a person of the victim's age. Lastly, the court justified the reason for the 79-month upward departure by explaining that, by the time defendant would be released from prison, after at least 30 years, the victim would be 49 years old which would enable her to live peacefully for a long time, to marry, and raise a family.

The trial court neglected to mention lifetime electronic monitoring (LEM) as part of its sentence and failed to check the box on its November 28, 2022 judgment of sentence indicating that LEM should be a part of defendant's sentence. The court, however, stated at the resentencing that it would "go along with the original sentence . . . ." The court entered an amended judgment of sentence on December 16, 2022, and again did not check the box for LEM. But, on December 22, 2022, the court amended the judgment of sentence a second time with the LEM box checked. The court again imposed upon defendant a 30-year minimum sentence. Defendant now appeals for the third time.

## II. STANDARD OF REVIEW

We review for an abuse of discretion the trial court's sentencing of defendant to a minimum term of imprisonment of 30 years, an upward departure from the minimum sentence range calculated under the sentencing guidelines. See *People v Steanhouse*, 500 Mich 453, 459-460, 471; 902 NW2d 327 (2017); *People v Odom*, 327 Mich App 297, 303; 933 NW2d 719 (2019).

---

[2] *People v Hudson*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2022 (Docket No. 355863) (*Hudson II*).

Such a review requires an examination whether the trial court abused its discretion by "violating the principle of proportionality." *Steanhouse*, 500 Mich at 477. Courts review a sentence for reasonableness without regard to whether the trial court sentenced a defendant within the guidelines; whether a sentence is reasonable depends on whether it is disproportionate to the "seriousness of the circumstances surrounding the offense and offender." *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 3-4. A court abuses its discretion if its decision falls outside the range of reasonable and principled outcomes. *Odom*, 327 Mich App at 303. "We review the trial court's factual findings for clear error" which "exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 303-304 (citations omitted). We review de novo questions regarding the application and interpretation of statutes and court rules. See *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017).

## III. ANALYSIS

## A. THE UPWARD DEPARTURE

Defendant argues that the trial court erred by sentencing him to a minimum sentence that exceeded the highest recommended minimum sentence under the sentencing guidelines range without explaining its rationale for the departure. He further argues that this case warrants resentencing before a different judge. He also contends that, if we disagree that resentencing is required, the first judgment of sentence entered after the second resentencing (the November 29, 2022 judgment of sentence) should be reinstated. Defendant's arguments lack merit.

Defendant again argues that the trial court erred by imposing an upward departure sentence without explaining its rationale for the departure. We disagree.

In 2015, our Supreme Court held that the sentencing guidelines "are advisory only." *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015). The Court instructed that the guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion" and should be considered by trial courts when sentencing defendants. *Id*. at 391; see also *Steanhouse*, 500 Mich at 474, 475. When trial courts depart from sentencing guidelines, "appellate courts must review all sentences for reasonableness . . . ." *Posey*, ___ Mich at ___; slip op at 29.

When departing from the sentencing guidelines minimum range, "a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). Such an explanation must articulate the need for departure and include a justification for the "*particular* departure" made by the trial court. *People v Smith*, 482 Mich 292, 303; 754 NW2d 284 (2008). Many factors may be relevant to a sentence's proportionality, including but not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct

while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017).

In *Smith*, the trial court sentenced the defendant to three concurrent sentences of 30 to 50 years' imprisonment for three counts of CSC-I. The sentence exceeded the sentencing guidelines range of 9 to 15 years' imprisonment. *Id*. at 296, 297. The defendant knew the victim since she was one year old, when the victim first attended a daycare at the defendant's house. *Id*. at 295. When the victim was nine years old, the defendant began sexually abusing her and continued to do so for 15 months. *Id*. at 295-296. To justify its departure sentence, the trial court had relied on the long, 15-month period over which the abuse occurred, threats made by the defendant to the victim if she told anyone about what was happening, and the added trauma to the victim from the gynecological examination. *Id*. at 301-303. Nevertheless, the court failed to articulate why it made such a "substantial departure" from the guidelines. *Id*. at 310, 312. Our Supreme Court remanded the case to the lower court for an articulation of the reasons underlying its departure sentence. *Id*. at 319.

When justifying a particular departure from the sentencing guidelines, trial courts must consider "objective and verifiable" factors "external to the minds of the judge, the defendant, and others involved in making the decision, and are capable of being confirmed." *People v Geno*, 261 Mich App 624, 636; 683 NW2d 687 (2004). In *Geno*, a trial court convicted the defendant of CSC-I against the victim, his girlfriend's two-year-old daughter, and sentenced him to 30 to 90 years' imprisonment. *Id*. at 625. The trial court justified its upward departure on the future risk that the defendant posed to children. *Id*. at 636. This Court concluded that the factors considered by the trial court, including the defendant's admitted attraction to children, history of child sex crimes, and repeated failure to rehabilitate himself, were objective and verifiable. *Id*. This Court affirmed the trial court's sentence. *Id*. at 637.

In *People v Reincke*, 261 Mich App 264, 265; 680 NW2d 923 (2004), the trial court exceeded the recommended sentencing guidelines range of 81 to 135 months' imprisonment and sentenced the defendant to 30 to 60 years' imprisonment following the defendant's conviction of sexually assaulting a three-year-old child when the child and her mother began living with him. *Id*. at 266. The trial court justified its upward departure based on the nature of the offense, the victim's vulnerability, and the defendant's danger to society. *Id*. at 269-271. This Court held that these factors were objective and verifiable given the extreme bodily harm suffered by the child, as revealed by medical treatments, and her obvious need for future psychological treatment based on her postabuse behavior. *Id*. This Court noted that the trial court had "extensive knowledge of the facts and direct familiarity with defendant's circumstances," that defendant's excuse that he accidentally penetrated the victim deserved no credit, and the jury deliberated for only 20 minutes before convicting the defendant. *Id*. at 271. This Court found the trial court's upward departure sentence fully justified. *Id*. at 272.

In this case, the trial court relied on similar factors to those utilized by the court in *Reincke*, namely defendant's abuse of authority, the victim's vulnerability, and the continued danger posed by defendant to the victim and to society. At the second resentencing, the trial court stated that defendant abused his authority. The record confirms that defendant was the victim's stepfather for approximately 10 years. The trial court stated that the abuse of this authority occurred when

defendant drugged the victim, sexually abused her, and filmed her. Evidence in the record supports the court's findings. Although the nature of the abuse is not as graphic as that which occurred in *Reinke*, in which the young child victim suffered significant bodily injuries, the details of defendant's abuse revealed at trial were appalling.

Unlike in *Reincke*, in which the victim simply lived in the defendant's home, the victim in this case was the defendant's stepdaughter who had a close personal relationship with defendant. She confirmed that she trusted and cared for her stepfather. As her stepfather, defendant held authority over the victim. The victim confirmed that, at the time that she worked with defendant, she had no reason to mistrust him, which is why she took defendant's prescription pills. The record indicates that the victim suffered sudden outbreak of panic attacks immediately after she started working with defendant who drugged her, sexually assaulted her, and made shocking videos of the assaults on his cell phone. Such conduct established that defendant abused his parental authority. The court did not err by finding that defendant had authority over the victim and abused that authority and considering such objective and verifiable facts in determining defendant's sentence.

Although the 17-year-old victim in this case may not have been as vulnerable as the victims in *Reincke*, *Smith*, or *Geno*, the close father-daughter relationship rendered the victim particularly vulnerable to defendant's abuse. Defendant and the victim lived in the same house for 10 years without any known incident of criminal sexual conduct on the part of defendant toward the victim. Defendant obtained the victim's trust and exploited her vulnerability and trust to get her alone at the camper where defendant lived after separating from the victim's mother away from the support and protection of her family. He gave her prescription medication that she took that rendered her unconscious. Then, while in that unconscious state, defendant sexually assaulted the victim and recorded it on his cell phone. Objective and verifiable evidence in the lower court record supports the trial court's conclusion that the victim was very vulnerable to defendant at the time he sexually assaulted her.

Defendant's abuse of his stepdaughter and his recording of the abuse, support the trial court's fears that defendant posed a continued danger to the victim and to society. Unlike the defendant in *Geno*, defendant did not commit any known sex offense against children before his abuse of the victim. Nevertheless, like the defendant in *Smith*, defendant sexually assaulted his own minor stepdaughter whom he knew for years. The trial court observed that defendant recorded the abuse in five videos and saved them on his phone which suggested that he intended to use the recordings for future gratification. Such conduct strongly suggests a lack of remorse on defendant's part and a serious potential to continue sexually abusive behavior. Defendant's potential for new offenses against the victim is only exacerbated by the fact that defendant, despite the evidence presented to the contrary, denied that he ever sexually assaulted the victim.

During the resentencing hearing the trial court reflected upon defendant's recording of his sexual assaults of the victim and explained how that could have a profound effect upon the victim and that the sentencing guidelines did not consider such conduct. The court observed that children of the victim's generation are particularly susceptible to the ravages of video exploitation and the potential for dissemination of such which permit lingering fear and trauma for the victim. The trial court noted that defendant had secretly recorded the assaults and placed the videos in a file called "WOW" which the court found disturbing.

The lower court reflected upon the facts of this case and expressed the conclusion that the sentencing guidelines were wholly inadequate to address the situation presented to the court. The court stated its rationale and justification for the 79-month upward departure as more adequately providing the victim an opportunity to grow up and establish herself in a relationship with time to have and raise children. The court explained that the guidelines did not fully provide for the lifelong trauma inflicted upon the victim and the victim's need to experience peace and happiness, safety and security. Analysis of the record in this case indicates that the trial court justifiably believed defendant to be a danger to society, as well as a danger to the victim, and it adequately articulated how a sentence within the guidelines would not appropriately reflect the severity of the offense or the offender, and that an upward departure sentence is more proportionate to the offense and the offender than a different sentence would have been. Consequently, a third resentencing is not required.[3]

## B. ELECTRONIC MONITORING.

Defendant also argues that, if we disagree that resentencing is required, the first judgment of sentence entered after the second resentencing (the November 29, 2022 judgment of sentence) should be reinstated. We disagree because the trial court's failure to list LEM as part of defendant's sentence constituted a harmless clerical error.

MCL 750.520b states, in relevant part, as follows:

> (2) Criminal sexual conduct in the first degree is a felony punishable as follows:

> (a) Except as provided in subdivisions (b) and (c), by imprisonment for life or for any term of years.

> * * *

> (d) In addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring under section 520n.

In *Comer*, our Supreme Court held that MCL 750.520b(2)(d), "demonstrates the Legislature's intent to mandate lifetime electronic monitoring for all CSC-I sentences in which the defendant has not been sentenced to life without parole." *Comer*, 500 Mich at 290. Our Supreme Court has also held that "any corrections or modifications to a judgment of sentence must comply with the relevant statutes and court rules." *People v Holder*, 483 Mich 168, 176; 767 NW2d 423 (2009). When it comes to correcting judicial orders or judgments for mistakes, the Michigan Court

---

[3] Because we have concluded that a third resentencing is not required, we need not address defendant's argument that a different judge should preside over his resentencing.

Rules distinguish between two types of mistakes: clerical and substantive. MCR 6.435 covers correction of mistakes in relevant part as follows:

> (A) Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party, and after notice if the court orders it.

> (B) After giving the parties an opportunity to be heard, and provided it has not yet entered judgment in the case, the court may reconsider and modify, correct, or rescind any order it concludes was erroneous.

"Under [MCR 6.435(A)], a court may correct a clerical mistake on its own initiative at any time, including after a judgment has entered." *Comer*, 500 Mich at 293. Unlike correction of clerical mistakes, MCR 6.435(B) provides that substantive mistakes may only be corrected by a trial court on its own initiative before "judgment is entered." *Id*. at 297. Generally, errors or omissions "by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A).

Our Supreme Court has held that a failure to include LEM as part of a defendant's original sentence constitutes a substantive error. *Comer*, 500 Mich at 293. In *Comer*, the defendant was convicted of CSC-I, and the sentencing court failed to include LEM as part of the defendant's sentence on the judgment of sentence. *Id*. at 283-284. The sentencing court also failed to do so nearly a year later when the court resentenced the defendant. *Id*. at 284. After the resentencing, the Michigan Department of Corrections notified the sentencing court of the mistake and the court signed a new judgment of sentence which included LEM. *Id*. at 285. Our Supreme Court ruled that this mistake was substantive, not clerical, because "the original sentencing judge said nothing about lifetime electronic monitoring at the initial sentencing." *Id*. at 293. The Court also stated that, under the Court Rules, a "trial court's authority to correct an invalid sentence on its own initiative ends upon entry of the judgment of sentence." *Id*. at 294. Although the defendant's sentence was statutorily invalid because it failed to include the "mandated [LEM] punishment," the sentencing court improperly later added LEM as part of the defendant's sentence. *Id*. at 299-300.

However, a trial court's erroneous sentencing of a defendant need not be overturned if that error was harmless. *People v Pendergrass*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362218); slip op at 3. In *Pendergrass*, the trial court failed to mention LEM at sentencing. *Id*. at 1. The court also failed to include LEM in the original judgment of sentence. *Id*. On its own initiative, the court corrected its mistake a few weeks later. *Id*. Six months after the original judgment of sentence had been entered, the defendant moved to correct the allegedly invalid sentence and to have the original judgment reinstated. *Id*. at 2. The trial court held a hearing and denied the defendant's motion. *Id*. On appeal, this Court pointed out that, since *Comer*, our Supreme Court had modified the court rules so that a court could correct an invalid sentence within six months and after giving parties an opportunity to be heard. *Id*. at 3-4, citing MCR 6.429(A). The trial court made a timely correction of its error, but failed to notify the parties beforehand. *Pendergrass*, ___ Mich App at ___; slip op at 4. Nevertheless, this Court held that

"reversal [was] unwarranted," given that the parties had a "timely opportunity to be heard," and that there was nothing that the defendant could have done to avoid LEM. *Id.*, citing MCR 2.613(A). In summary, the error was "harmless." *Pendergrass*, ___ Mich App at ___; slip op at 4. This Court also noted the "troubling" fact that the defendant did not move to correct the sentence until exactly six months after the original sentence had been entered, giving the court no time to correct its error. *Id.* For these reasons, this Court upheld the lower court's corrected judgment of sentence. *Id.*

Although the present trial court clearly erred by not including mandatory LEM as part of defendant's sentence in the November 28, 2022 judgment of sentence, the court's error was clerical, considering that the trial court had clarified at the second resentencing its intent to reinstate defendant's original sentence which included LEM.

The lower court explained its intention at the second resentencing to reinstate the original sentence. As part of the original sentence, the first judgment of sentence entered by the trial court on December 18, 2017, included a checked LEM box. The lower court in this case implicitly referred to LEM at the resentencing via its reference to the original sentence, which, also unlike the original sentence in *Comer*, clearly included LEM as part of defendant's sentencing via the original judgment of sentence.

Although not dispositive to this issue, it is worth noting that defendant failed to move to this Court to reinstate a judgment of sentence that lacked LEM when he first had the opportunity to do so after the first resentencing. After the first resentencing, the trial court initially failed to check the LEM box on the November 16, 2020 judgment of sentence. However, on January 13, 2021, approximately two months later, the trial court entered a judgment of sentence with the LEM box checked. On its second appeal to this Court, defendant failed to mention the lack of LEM as part of the first resentencing, thus preventing the trial court from correcting its error. See *Pendergrass*, ___ Mich at ___; slip op at 4. Defendant's raising the issue at this late hour, namely after the trial court has sufficiently justified its departure from the sentencing guidelines, resembles what occurred in *Pendergrass*. In *Pendergrass*, this Court found it "troubling" that the defendant waited until the last day of the six-month deadline to raise the issue and, in so doing, prevented the trial court from correcting its mistake. *Id.* In both cases, the defendants' efforts appear to be last-ditch efforts to curb the harshness of their sentences, nothing more. Defendant's failure to raise the issue after the first resentencing also suggests that defendant understood the trial court's error as clerical and, therefore, not worth raising on his first appeal.

In this case, the trial court indicated its intention to reinstate the original sentence, which included the original LEM provision. Therefore, the omission was clerical and harmless.

Affirmed.

/s/ James Robert Redford
/s/ Christopher P. Yates