*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 11, 2024

v

JUSTIN DEWAYNE STEPHENS,

Defendant-Appellant.

No. 363446
Ionia Circuit Court
LC No. 2010-014917-FC

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

A jury convicted defendant of first-degree murder, MCL 750.316, and second-degree home invasion, MCL 750.110a(3), in 2022. The trial court originally sentenced defendant to life without parole (LWOP) for the murder conviction and 8 to 15 years in prison for his home invasion conviction.

Defendant challenged his convictions and sentence on appeal. This Court issued a per curiam opinion affirming his convictions but remanding for resentencing under *Miller v Alabama*, 567 US 460, 489; 132 S Ct 2455; 183 L Ed 2d 407 (2012). *People v Stephens*, unpublished per curiam opinion of the Court of Appeals, issued August 27, 2013 (Docket No. 306032), pp 1, 8.

On remand, the trial court resentenced defendant to a prison term 40 to 60 years for his murder conviction. Defendant now appeals that sentence by right. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The basic facts of this case were summarized in this Court's previous opinion:

> This case arises from the victim's son finding his mother's body at her home on December 1, 2006. At the time of the discovery, the victim was found in a pool of blood near a broken Santa Clause [sic] statue, [and] a broken mirror which was parallel to a hole in the drywall. The victim's son found his mother's purse without

any money. He testified at trial that the victim always had money in her purse and kept her house immaculate.

* * *

On May 6, 2010, [a Texas Ranger] interviewed defendant for the first time. Defendant was cooperative, and initially denied killing the victim. [The Texas Ranger] probed defendant's alibis for several hours. At the end of that time, [the Texas Ranger] told defendant that he believed that defendant murdered the victim based on inconsistencies in defendant's statements. Defendant broke down, started crying, and indicated that "he had done it." Defendant then agreed to provide [the Texas Ranger] with a report of exactly what happened. . . .

[The Texas Ranger] interviewed defendant a second time in July 2010. During the interview, [the Texas Ranger] wrote the word "others" on a piece of paper, shoved it toward defendant, and told him that "you're not gonna (sic) get it until you understand that it's not about you. It's about others. It's about who you affected; the family, the victim, everyone who knew her. "This caused defendant to break down and start crying. [The Texas Ranger] worked with defendant to elicit details of what happened, starting with hypothetical's [sic], moving toward what actually happened. Eventually, defendant confessed. [The Texas Ranger] described what defendant told him as follows:

> [h]e gave me details in that he said you know he killed her, and he told me the story, which was basically he had broken into the house. The side door was open. He knew the lady. I guess he'd been over there twice before and figured that she had some money. He was despondent because he thought his girlfriend was pregnant. He wanted to go back to Texas. He had all these major life issues going on. But he broke into the side door of the house and he was in there going through the drawers and he found a purse. And in the purse he found I believe he said five $20.00 bills. So he takes it and he puts it in his pocket. Everything's quiet and he's still going through the house and he said all of a sudden he hears what are you doing here or what are you doing. And he turns around and [the victim] is standing in the doorway. And he said he looked and he was shocked. He didn't know what to do. He stood up and he basically walked by her. He said he was basically acting like she wasn't there and he was going to walk by her. He said as he did this she grabbed him and basically carried him towards the dining room table by a shirt sleeve and set him down. While this was going on she was saying what are you doing, why are you doing this? And he said he didn't say anything. He just basically did what she did. She directed him to the table. He sat down at the table. She said I'm gonna (sic) call the police. At that point in time he said he just couldn't do that. He couldn't have that happen. And he said he stood up and he started walking out. He said she grabbed him by the arm and he said he grabbed whatever was on a shelf. I don't know that [he] ever

-2-

articulated what it was, but he grabbed whatever was on the shelf and he hit her with it; hit her in the head with it. She fell, stumbled, did whatever [sic] said that she started going towards the door. As she was going towards the door, [defendant] realized that this couldn't happen. He tackled her. He said he thinks he may have stabbed her. He said the next thing he knows he's outside covered in blood behind the house.

\* \* \*

[T]he jury found defendant guilty of first-degree murder based both on a premeditation theory and also a felony murder theory, and second-degree home invasion. The trial court sentenced defendant to life imprisonment for first-degree murder and to 8 to 15 years' imprisonment for second-degree home invasion . . . . [*Stephens*, unpub op at 1-3.]

In his first appeal, defendant asserted that, at the time of his offense, he was just 17 years of age. *Id*. at 7. Defendant admitted that, at the time of the sentencing, he failed to raise the issue of his age. *Id*. This Court affirmed defendant's conviction but remanded the case for resentencing on his first-degree murder conviction in accordance with *Miller*. *Id*. at 8.

On remand, the prosecution filed a supplemental motion under MCL 769.25 and 769.25a, seeking the re-imposition of defendant's LWOP sentence. The parties engaged in a three-day *Miller* hearing, during which the trial court heard arguments and testimony regarding the prosecution's motion. At the conclusion of the hearing, the trial court concluded that defendant should be sentenced to a term of years, not life without parole.

At the resentencing hearing, the trial court resentenced defendant to 40 to 60 years imprisonment with credit for 4,444 days already served. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's sentencing decisions to determine whether the trial court violated the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 471, 477; 902 NW2d 327 (2017). Whether a sentence is reasonable depends on whether it is disproportionate to the "seriousness of the circumstances surrounding the offense and offender." *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 3-4. See also *Graham v Florida*, 560 US 48, 59; 130 S Ct 2011; 176 L Ed 2d 825 (2010). A trial court abuses its discretion if its decision falls outside the range of reasonable and principled outcomes. *People v Odom*, 327 Mich App 297, 303; 933 NW2d 719 (2019); *People v Grant*, 329 Mich App 626, 635, 637; 944 NW2d 172 (2019).

## III. ANALYSIS

Defendant argues that the trial court failed to adequately consider his youth as a mitigating factor as required by *Miller* and its progeny, and that it imposed a disproportionate and therefore unreasonable sentence. We disagree.

In *Miller*, 567 US at 465, the United States Supreme Court concluded that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " The Court reasoned that mandatory LWOP sentencing precludes a trial court's consideration of a defendant's

> chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. [*Id*. at 477-478.]

The Court concluded that a judge or jury must have the opportunity to consider such mitigating circumstances before imposing the harshest possible penalty, including life imprisonment without the possibility of parole, for a juvenile. *Id*. at 489.

After *Miller* was issued, the Michigan Legislature enacted MCL 769.25, which states in relevant part that, if a resentencing court does not sentence a defendant to LWOP, then the court shall sentence the defendant to a maximum term of imprisonment of not more than 60 years, and the minimum term shall be not less than 25 years or more than 40 years. MCL 769.25(9). In *People v Boykin*, 510 Mich 171; 987 NW2d 58 (2022), the Michigan Supreme Court stated that, although trial courts should consider a defendant's youth as a mitigating factor at *Miller* hearings, they "need not articulate their bases for considering an offender's youth" when sentencing a defendant to a term of years. *Id*. at 190.

> The Michigan Supreme Court summarized the *Miller* factors as follows:
>
> (1) "[defendant's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (5) "the possibility of rehabilitation . . . ." [*People v Skinner*, 502 Mich 89, 114-115; 917 NW2d 292 (2018), quoting *Miller*, 567 US at 477-478.]

Regarding youth as a mitigating factor, the Michigan Supreme Court stated that youth affects consideration of the four objectives of sentencing. See *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972), *Boykin*, 510 Mich at 188, 189. These objectives are (1) the reformation of the

offender, (2) the protection of society, (3) disciplining the offender, and (4) deterring others from committing similar offenses. *Snow*, 386 Mich at 194, *Boykin*, 510 Mich at 188. Similarly, this Court has stated that when a court sentences a minor convicted of first-degree murder to a term of years, the court should be "guided by" a balancing of the *Snow* objectives as well as the attributes of youth described in *Miller*. *People v Wines*, 323 Mich App 343, 352; 916 NW2d 855 (2018).

Regarding the first objective, the Supreme Court has stated that, without considering an offender's youth, a sentence cannot adequately address the offender's prospects for reformation. *Boykin*, 510 Mich at 189. As for the second objective, the young have a heightened capacity for change relative to adults. *Id*. Regarding the third objective, because even heinous crimes committed by juveniles are less likely to support the existence of a depraved character in a minor relative to an adult, disciplining the wrongdoer must be viewed differently "under the lens of youth." *Id*. Lastly, regarding deterrence, the same characteristics that render juveniles less culpable than adults render them less likely to consider potential punishment. *Id*. Consequently, the Michigan Supreme Court has concluded that, as a mitigating factor, a defendant's youth will "inevitably" impact the objectives of sentencing articulated in *Snow*. *Id*.

At the conclusion of the *Miller* hearing in this case, the trial court found that defendant was impetuous, lacking in complete growth, and impulsive in his behavior, and that he had failed to appreciate the risks or consequences of his behavior. The trial court also acknowledged defendant's upbringing and home environment, including the fact that his parents were largely absent from his life, leaving him to be raised by his sickly grandmother. The trial court also discussed defendant's lack of a bond with his parents and the fact that defendant's childhood was characterized by bullying, substance abuse, academic struggle, trauma, and domestic violence. As for the prospect of rehabilitation, the trial court found that defendant was working toward rehabilitation. The record shows that the trial court more than adequately considered defendant's youth in light of *Miller*. See *Skinner*, 502 Mich at 114, 115. Further, at sentencing, the trial court discussed all four *Snow* objectives and how they impacted its sentencing decision.

Although the trial court expressed confusion regarding *Boykin's* requirement that trial courts consider a defendant's youth as a mitigating factor without having to articulate that consideration on the record, defendant has failed to establish that the trial court inadequately considered his youth as a mitigating factor. See *Boykin*, 510 Mich at 190, 193, 194. The record in this case shows that the trial court gave thorough and well-reasoned consideration to defendant's age as it affected the proportionality of his sentence.

Further, we conclude that the sentence imposed by the trial court was reasonable and proportionate. Although the sentencing guidelines are no longer mandatory, the Michigan Supreme Court has held that "appellate courts must review all sentences for reasonableness . . . ." *Posey*, ___ Mich at ___; slip op at 29. In determining a sentence's reasonableness, appellate courts must look to "whether the sentence is proportionate to the seriousness of the matter." *Posey*, ___ Mich at ___; slip op at 29. In *People v Milbourn*, 435 Mich 630, 656; 461 NW2d 1 (1990), the Michigan Supreme Court stated that a reviewing court may consider the following, nonexhaustive list of factors when determining a sentence's proportionality:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct

while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019).]

The trial court noted that defendant had expressed genuine remorse for killing the victim. Additionally, the trial court acknowledged the possibility that defendant may have the potential to be a law-abiding citizen upon release. However, the trial court was also presented with an evaluation from the Michigan Department of Corrections (MDOC) that classified defendant as a having a high risk of recidivism and a medium risk for violence. Further, as the trial court noted, defendant had committed numerous crimes in Texas after committing the murder in Michigan. Notwithstanding the fact that they did not involve murder, defendant's subsequent crimes in Texas cast further doubt on defendant's potential for rehabilitation.

The trial court also considered defendant's potential for dishonesty. At the resentencing hearing, the trial court discussed in depth certain inconsistencies in defendant's testimony about the murder. The trial court noted that defendant had stated during the *Miller* hearing that he had no memory of what had occurred during the murder because he was under the influence of methamphetamine. The trial court asked defendant why he had returned to the victim's house and hid the bloody clothing in the woods, if he had no memory of the murder itself. Further, the court noted that, despite his claim not to remember the crime, defendant had confessed to police officers that he had grabbed an object from the shelf and struck the victim.

Additionally, the trial court explicitly considered defendant's age as it impacted his potential for rehabilitation:

Age certainly factors into that type of determination. I think we all are in agreement, or studies certainly show, that the older a person is when he or she is released from incarceration, the less likely he or she will be to reoffend. I think there's some significance, some statistical significance to that. But we just don't know.

Ideally, [defendant], while he is incarcerated, will continue to engage in the programming, and I've seen all of these certificates that have been provided, and they're very impressive. And hopefully, [defendant], you are very sincere in wanting to continue improving your situation, or acquiring a trade, or whatever it is that might be available to you now that you're receiving a term of years.

The trial court also considered the sentencing objectives of deterrence, the protection of society, and discipline of defendant. See *Boykin*, 510 Mich at 188. The trial court noted that prison sentences protect society from individuals who would commit offenses like home invasion and murder, that society requires that individuals who commit such crimes be punished, and that there was likely some deterrent effect to lengthy prison sentences as punishment for those crimes.

The trial court also considered the horrific nature of the crime and the suffering of the victim's family. This Court has stated that trial courts may consider a victim's vulnerability and the nature of a defendant's offense against the victim when sentencing a defendant. *People v Reincke*, 261 Mich App 264, 269-271; 680 NW2d 923 (2004). In this case, the trial court stated

that the victim, an 80-year old woman, was the matriarch of her family, as well as a loving mother and grandmother. At the time she was murdered, the victim had obviously been preparing for the Christmas holiday season. See *Stephens*, unpub op at 1. The trial court described defendant's crime as senseless, selfish, and intolerable, noting that defendant had committed this violent murder to obtain a hundred dollars from the victim's purse. During resentencing, the victim's daughter testified to the trauma experienced by the family and their community. The daughter described this trauma as irreversible.

Defendant has not demonstrated that the trial court's reasoning and sentencing decision fell outside the range of principled outcomes. *Odom*, 327 Mich App at 303. Defendant argues that the petty crimes against property committed by defendant in Texas are not as serious as the crime of murder, but does not explain how the trial court abused its discretion by considering defendant's repeated criminality in the context of determining his potential for rehabilitation. Further, the record shows that the offenses committed by defendant in Texas included criminal trespass, theft, and burglary of a building—offenses similar in nature to the home invasion that led to defendant's murder of an elderly woman. Defendant also argues that the MDOC did not properly evaluate defendant as required by caselaw, but he fails to provide any legal or factual support for this assertion; moreover, it is clear from the record that the trial court engaged in its own analysis and did not merely adopt the MDOC's evaluation. Defendant also argues that the prosecution incorrectly claimed that defendant had offered his use of methamphetamine as an "excuse" for committing murder, and that defendant had been dishonest about his childhood and upbringing. However, the record does not show that the trial court adopted those arguments—in fact, the trial court acknowledged the difficult upbringing defendant had, and it formed its own conclusion regarding defendant's dishonesty based on its review of defendant's own statements and actions after the murder.

Defendant has not demonstrated that his sentence was unreasonable and disproportionate under the circumstances of this case, or that the trial court failed to adequately consider his youth in imposing a term of years sentence for first-degree murder. Therefore the trial court did not abuse its discretion in resentencing defendant. *Posey*, ___ Mich at ___; slip op at 29.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young